**Walter J. PULAWSKI**

v.

**Henry J. BLAIS III.**

**No. 84–483–Appeal.**

Supreme Court of Rhode Island.

March 18, 1986.

Alfred Factor, Kirshenbaum & Kirshenbaum, Providence, for plaintiff.

Joseph E. Marran, Jr., Pawtucket, for defendant.

## OPINION

MURRAY, Justice.

This case involves an appeal by the defendant, Henry J. Blais III, arising out of a civil action commenced against him by the plaintiff, Walter J. Pulawski, for alienation of affections and criminal conversation. Originally, the jury returned a verdict in the plaintiff's favor totaling $500,000. The plaintiff, however, accepted a remittitur ordered by the trial judge that reduced the amount of damages to $300,000. As a result of this judgment, the defendant appealed to this court for relief. For the reasons fully set forth below, we reverse and remand for a new trial.

The plaintiff and his wife, Patricia, were married on December 29, 1965. Although there is some discrepancy in the record as to when the demise of this particular marital union began, it is indisputable that the marriage had seriously deteriorated by the later part of 1978. In early November 1978, plaintiff suspected that his wife was engaged in a clandestine love affair with defendant, plaintiff's attorney and close personal friend. Pursuant to this suspicion, plaintiff wiretapped the telephone in the marital residence. The tapping yielded several recorded telephone conversations between plaintiff's wife and defendant. It is clearly evident from a review of the transcripts of these recordings that an illicit relationship involving plaintiff's wife and defendant had developed. As a result, plaintiff secured legal counsel and filed for divorce in 1979, which became final in 1984. In addition to this divorce action, plaintiff instituted a civil suit against defendant for alienation of affections, which was subsequently amended to include a criminal-conversation count. Prior to the trial's inception, defendant presented a motion in limine to determine, inter alia, the admissiblity of the recorded conversations between plaintiff's wife and himself.

■ Focusing upon the applicable law concerning this particular pretrial matter, we note that Title III of the Omnibus

Crime Control and Safe Streets Act, 18 U.S.C.A. § 2510 through § 2520 (1970) has preempted the field in wiretap and established minimum standards for the admissibility of evidence procured through electronic or mechanical eavesdropping. As we acknowledged in a recent opinion, the scope of Title III's authority extends to both federal and state courts. *State v. Delaurier,* 488 A.2d 688, 692 (R.I.1985). Specifically, 18 U.S.C.A.

§ 2515 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."[1]

In conjunction with the aforementioned statute, 18 U.S.C.A. § 2511(2)(d) declares it unlawful for a person who is not a party to a conversation and not acting under color of law to intercept any wire or oral communication *without the consent of one of the parties to such conversation.* [2]

According to testimony elicited from plaintiff and his wife during this pretrial hearing, considerable disagreement between the parties existed concerning whether plaintiff's wife had consented to the tapping of the phone. In spite of this conflicting testimony and the above-cited federal law previously brought to the court's attention during the course of the hearing, the trial judge ruled that consent was not in issue.[3] The record discloses that the trial judge did not apply the pertinent aforementioned sections of Title III in reaching a determination on this pretrial matter. Instead, he ruled that under Rhode Island law, consent had nothing to do with the admissibility of the tapes.[4] The trial judge further posited that assuming the recordings procured by plaintiff were in violation of Rhode Island law, the only question before the court was whether the allegedly unlawful wiretaps were still

---

**1.** Rhode Island has adopted its own wiretap statute, G.L.1956 (1981 Reenactment) chapter 5.1 of title 12, which closely parallels Title III but does not contain a provision similar to 18 U.S.C.A. § 2515 (1970).

**2.** A contention raised by plaintiff in regards to this issue is that Title III does not cover spousal wiretapping. *Simpson v. Simpson,* 490 F.2d 803, 805 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). Although the basis of the trial judge's ruling on the tapes' admissibility did not involve a determination that Title III was inapplicable, plaintiff's argument warrants a brief comment since it does raise a matter that directly bears on the posture of our opinion above. Without digressing to any great length, we find that no spousal exception exists within the provisions of Title III. *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984) and *United States v. Jones,* 542 F.2d 661, 667 (6th Cir.1976). If Congress had intended to exempt spousal wiretappings from the scope of Title III, they would have explicitly done so. Moreover, the legislative history of the federal wiretap statute indicates a congressional intent to establish a broad prohibition on all private electronic surveillance. *United States v. Jones,* 542 F.2d at 669. No implied exception for interspousal wiretapping can be gleaned from a reading of Title III's legislative history. *Pritchard v. Pritchard,* 732 F.2d at 374. As a result, we shall not imply an exception for spousal wiretapping from the coverage of Title III where Congress has not authorized one.

**3.** The pertinent portion of the trial judge's ruling is set forth as follows:

"So far as the admissibility of the tapes are concerned, and in some measure this is mixed with the ruling of the [c]ourt with regard to calling Mr. Blais as an adverse witness, two points have to be made. First of all, notwithstanding the fact that we had evidence this morning which is contradictory on whether or not [plaintiff's wife] consented to the interception, it appears to the [c]ourt that consent is not involved in this case one way or another. The issue is very narrow, and that is whether the tape is admissible, and when we ask that question, we ask a question that deals with relevance and materiality."

**4.** The Rhode Island statutes referred to by the trial judge in his ruling concerning the tapes' admissibility were chapter 5.1 of title 12 and chapter 35 of title 11.

admissible. Since the trial judge considered the tapes to be material and relevant to the action, the recordings were deemed by him to be admissible.

In light of the fact that § 2515 extends the scope of Title III's authority to state-court proceedings, the trial judge's failure to utilize the governing provisions of this particular federal statute was clearly erroneous. Pursuant to a reading of § 2511(2)(d) and § 2515, an initial determination on the issue of consent must be made before the question of the tapes' admissibility can be addressed. Consequently, the trial judge committed error in ruling that consent had no bearing on the admissibility of the recordings. In discussing this very same issue in the divorce action between plaintiff and his wife, we emphatically stated that under a Title III analysis, "[the] question of consent goes to the very heart of the trial justice's ruling on admissiblity * * *." *Pulawski v. Pulawski*, 463 A.2d 151, 154 (R.I.1983). Hence, because the tapes were inherently prejudicial against defendant, the trial judge's error in admitting the recordings into evidence warrants a new trial on the merits.

In light of our reversal on the above issue, we shall decline to address the other issues raised by the defendant.

Accordingly, the defendant's appeal is sustained. The judgment of the trial court is reversed, and the case is remanded for a new trial on the merits.