438 S.E.2d 46

**JOHN D.K., Petitioner Below, Appellee,**

v.

**POLLY A.S., Respondent Below, Appellant.**

**No. 21777.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Nov. 23, 1993.

---

Jeffrey S. Bowers, Franklin, for appellee.

James Paul Geary, II, Geary & Geary, Petersburg, for appellant.

MILLER, Justice:

This appeal is brought by the respondent below and appellant, Polly A.S.,[1] from a final order entered by the Circuit Court of Grant County. By order entered July 10, 1992, the circuit court awarded custody of the appellant's twenty-one-month-old son, Jonathan C.K., to the child's natural father who was the petitioner below and appellee herein, John D.K. Polly A.S. asserts on appeal that the circuit court erred in reviewing this case because John D.K. did not file exceptions to the family law master's recommended order finding that she should retain custody of Jonathan. She also asserts that the circuit court erred in making material findings of fact that were not supported by the evidence and in finding that she was an unfit parent to have permanent custody of her infant son.[2]

## I.

The parties were never married. After Jonathan's birth on October 2, 1990, the mother applied for welfare benefits which resulted in a paternity suit being brought against the father for the payment of child support. John D.K. admitted paternity after blood tests did not exclude him from being Jonathan's biological father. He began paying child support and was awarded visitation in July of 1991. Until that time, it is undisputed that the mother was the primary caretaker. In fact, the father admits that he virtually had no contact with Jonathan until paternity was established.

On August 23, 1991, John D.K. filed a petition in circuit court alleging that it would be in the best interest of Jonathan for the circuit court to transfer custody from the mother to him. No reasons were given in the petition as to why John D.K. believed such a custody change would be to Jonathan's benefit. Instead, the main focus of the petition was in regard to the father's alternate request that the circuit court modify his visitation rights. He complained that visitations were difficult because the mother would harass him when he went to see Jonathan. To rectify the situation, John D.K. asked the court to allow him specific and exclusive visitation with Jonathan in the home of his parents.[3]

The matter was heard before a family law master on November 14, 1991. At the hearing, Polly A.S. agreed that John D.K. could have visitation at the paternal grandparents'

---

**1.** We follow our traditional practice in domestic relations and other cases which involve sensitive facts and do not use the last names of the parties so as not to stigmatize them or their child. *See, e.g., State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990); *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987).

**2.** Polly A.S. also has a seven-year-old son who resides with her.

**3.** At the time the petition was filed John D.K. was living with his parents. He is now married and lives in a trailer with his wife and her young son.

home from 1:00 p.m. to 5:00 p.m. on Sundays. As to the custody question, very little evidence was offered on the issue. John D.K. made a general statement that he desired custody. The father's lawyer[4] informed the family law master that John D.K. did not dispute that Polly A.S. was the primary caretaker, but, instead, he was alleging that she neglected Jonathan. The family law master asked the mother if she had taken care of Jonathan since his birth, i.e., provided him clothes, food, and medical care. She stated that she had and that Jonathan was in good health. The father was never asked, nor did he present any evidence, as to why he believed Jonathan was being neglected.

The family law master sent a recommended order to the circuit court and gave the parties until December 30, 1991, to file exceptions. The recommended order set forth, *inter alia*, the agreed upon visitation and denied the father's request for custody— finding the mother was a fit and proper person to have the permanent care, custody, and control of the child.

On February 25, 1992, the circuit court entered an order setting the matter for a pretrial hearing on March 9, 1992. At the hearing, counsel for the mother stated that he was unaware of the reasons why the case was before the circuit court because he did not have any record of exceptions being filed to the family law master's recommended order. He objected to the circuit court setting the matter for hearing without any exceptions being taken. The circuit court noted the objection, but, nevertheless, set the case for a hearing on April 24, 1992.[5]

A hearing was held on April 24, 1992, in which the circuit court heard evidence that Polly A.S. was neglecting Jonathan. John D.K., his wife, his parents, and a friend all testified about Jonathan's health and living conditions. The more serious allegations of neglect included evidence that Polly A.S. and Jonathan lived in a trailer that did not have electricity for several weeks during March and April of 1992. During this time, the trailer lacked hot water, refrigeration, a usable oven, and, except for one kerosene heater and a wood stove that was described as being improperly installed and a "fire hazard", the trailer lacked adequate heat. The circuit court also heard evidence that the child always was extremely unclean and smelled, always had a cold, and had a very severe diaper rash. In addition, John D.K. testified that one day he witnessed Jonathan sitting on the floor of the trailer playing beside dog manure, and that he saw Polly A.S. and Jonathan outside one night in the rain.

The evidence presented by John D.K. was controverted by Polly A.S. and her mother. They both testified that Jonathan was kept clean. Polly A.S. admitted that she did not have electricity for a period of time, but she said that it was because the electric company had to install a new pole before service became available. Polly A.S. stated that even when she did not have electricity, she would bathe Jonathan at a neighbor's trailer or carry hot water to her own trailer. She admitted that Jonathan was outside in the rain, but added that it was during the time she did not have refrigeration and she needed to go to the store to get milk. She also admitted that John D.K. saw Jonathan on the floor with the dogs, but stated that it only occurred once, and that she no longer owned the dogs.

Polly A.S. testified that she regularly took Jonathan to the doctor for checkups and vaccinations. She said that a health care worker told her that Jonathan's colds were from allergies and his rash was from an allergy to disposable diapers and diaper rash cream. Polly A.S. stated that she now uses different diapers and a different diaper rash

---

4. John D.K. has a different lawyer on appeal.

5. The record is confusing as to whether exceptions were actually filed. At the pretrial hearing, it was suggested that exceptions were attached improperly to the recommended order, so it was withdrawn and a new recommended order without exceptions was filed. In its order entered on July 10, 1992, the circuit court stated that John D.K. appeared in person, without counsel, and expressed his desire to appeal the recommended order. However, in his brief to this Court, John D.K. asserts that his father spoke with the circuit court judge and told the judge of John D.K.'s intent to appeal. As will later be discussed, the controversy surrounding the exceptions is irrelevant under the specific facts of this case.

cream to correct the problem. It was generally agreed that Jonathan was well behaved and seemed happy.

By order entered July 10, 1992, the circuit court awarded custody of Jonathan to John D.K. and awarded Polly A.S. supervised visitation. The circuit court found that Polly A.S. had abused and neglected Jonathan and that there was clear and convincing evidence that she was not a fit and proper person to retain custody of Jonathan. The circuit court continued by indicating that it was familiar with the deplorable living conditions of Polly A.S. and that it was not within her ability to improve those conditions. The judge further stated that he personally had observed the child as being unkempt and dirty, and had seen the child with a broken arm while in the custody of Polly A.S.

On July 21, 1992, Polly A.S. filed a motion for reconsideration with the circuit court. The circuit court denied the motion by order dated July 27, 1992. The circuit court granted Polly A.S. an extension on November 30, 1992, until March 27, 1993, to file her petition for appeal with this Court because the transcript of the prior proceedings was not prepared. The petition was filed in March, and, on June 9, 1993, this Court accepted the petition and issued a stay of the July 10, 1992, order of the circuit court.

Subsequently, John D.K. filed a motion to lift the stay, but this motion was denied by this Court on June 23, 1993. On June 30, 1993, John D.K. filed another motion, this time requesting this Court to remand the case to the circuit court for further evidentiary hearings. Polly A.S. filed a response requesting that the motion be denied. By order dated July 8, 1993, this Court denied the motion.

## II.

■ Polly A.S. argues that John D.K. waived his right to have the circuit court review the family law master's recommended order because no exceptions were filed as required under W.Va.Code, 48A-4-7 (1990), which states, in part: "Failure to timely file the petition *shall* constitute a waiver of exceptions[.]" (Emphasis added). Although it is true that under the foregoing Code section John D.K. waived his right to file exceptions in this case, we do not believe that the circuit court erred in reviewing the recommended order and in holding a hearing on the neglect allegations.

In *State ex rel. Dillon v. Egnor*, 188 W.Va. 221, 225-26, 423 S.E.2d 624, 628-29 (1992), we recognized the limited role of the family law master's recommended order:

> "The family law master's recommended order does not have the force and effect of law until it is approved by the circuit court. Indeed, except with regard to temporary procedural orders and *pendente lite* custody and support orders, the family law master has no power to enter an enforceable order affecting the rights and obligations of the parties. Under W.Va.Code, 48A-4-5 (1990), that power is reserved to the circuit court." (Footnote and citation omitted).[6]

■ The language of W.Va.Code, 48A-4-10(c) (1990), that provides for the review of the family law master's recommended order is not limited to only those recommended orders to which exceptions have been filed.[7] Moreover, we are not cited nor have we found any situation that limits a circuit court's right to review a recommended order of a family law master. Such a provision would be inconsistent with W.Va.Code, 48A-4-5, which makes a family law master's order unenforceable until approved by a circuit court. We conclude that in the absence of any statutory limitation to the contrary, a circuit court may review a recommended or-

---

6. W.Va.Code, 48A-4-5 (1990), provides:

"With the exception of pendente lite support and custody orders entered by a master in accordance with the provisions of section three [§ 48A-4-3] of this article, and procedural orders entered pursuant to the provisions of section two [§ 48A-4-2] of this article, an order imposing sanctions or granting or denying re- lief may not be made and entered except by a circuit court within the jurisdiction of said court and as authorized by law."

The current counterpart to this Code section is contained in W.Va.Code, 48A-4-15 (1993).

7. For the complete text of W.Va.Code, 48A-4-10(c), see note 9, *infra*.

der of a family law master even though no exceptions were filed.

■ Under W.Va.Code, 48A–4–10(d) (1990), when a circuit court reviews a recommended order of a family law master and discovers that certain evidence that may have affected the outcome of the case was either not considered or was inadequately developed, the court may recommit the matter with instructions to the family law master or proceed to take additional evidence on its own.[8] In this case, the circuit court was authorized to hold a hearing because the family law master did not consider the evidence of neglect.

After the circuit court makes its review, we recognized in *Higginbotham v. Higginbotham*, 189 W.Va. 519, 521–22, 432 S.E.2d 789, 791–92 (1993), "that under W.Va. Code, 48A–4–10(c) (1990), a circuit court 'may, in its discretion, enter an order upon different terms, as the ends of justice may require.'" In Syllabus Point 1 of *Higginbotham*, we stated:

"W.Va.Code, 48A–4–10(c) (1990), limits a circuit judge's ability to overturn a family law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, Rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known

its factual findings and conclusions of law."[9]

Therefore, in the present case, the circuit court had full authority to review the record, to review the order, to take necessary additional evidence, and to enter an order on different terms so long as the circuit court made the appropriate findings of fact and conclusions of law.

■ The problem with the circuit court's decision in this case stems from the factual findings that it made in determining that the mother was not a fit and proper person to have the permanent care, custody and control of Jonathan. The circuit court incorporated information into the findings of fact that was not offered into evidence at any hearing. For instance, the circuit court, in speaking of the parents of Polly A.S., said:

"That the Court knows the mother, Mildred [W]. 'Step-and-a-half', and father, Harold [W]. 'Cannonball', of the Respondent, Polly [A.S.]; the Respondent's lack of mental, physical, and emotional capacity to provide for her children is not entirely her fault—it is inherited; it will not improve, but will get worse."

The record contains no professional psychological or medical evidence to support this statement.

The circuit court also went beyond the scope of the record in stating in the findings of fact that Jonathan suffered a broken arm

8. W.Va.Code, 48A–4–10(d), specifically provides:
"In making its determination under this section, the circuit court shall review the whole record or those parts of it cited by a party. If the circuit court finds that a master's recommended order is deficient as to matters which might be affected by *evidence not considered or inadequately developed* in the master's recommended order, the court may recommit the recommended order to the master, with *instructions indicating the court's opinion, or the circuit court may proceed to take such evidence without recommitting the matter.*" (Emphasis added).
This Code section now appears at W.Va.Code, 48A–4–20(d) (1993).

9. W.Va.Code, 48A–4–10(c), in its entirety, reads:
"The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further

hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings, and conclusions of a master found to be:
"(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in conformance with the law;
"(2) Contrary to constitutional right, power, privilege, or immunity;
"(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
"(4) Without observance of procedure required by law;
"(5) Unsupported by substantial evidence; or
"(6) Unwarranted by the facts."
This section now is located at W.Va.Code, 48A–4–20(c) (1993).

while in the custody of his mother. Besides its mention in the final order, there is no evidence of when or how Jonathan suffered this serious injury. In fact, given the allegations that were made, it is very disturbing to this Court that no professional testimony exists as to Jonathan's condition nor as to the mother's or father's ability to care for him.

It is apparent that the circuit court relied on its personal, out-of-court knowledge of the respondent and her family in making these statements. We consistently have held that a custody decision by a circuit court will not be set aside unless the court abuses its discretion or makes a clearly erroneous application of the law as outlined in Syllabus Point 4 of *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 447 (1990):

" 'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syl. Pt. 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975)."

The case at bar bears some analogy to *Rowsey v. Rowsey*, 174 W.Va. 692, 329 S.E.2d 57 (1985), where we set aside a change of custody which had been awarded by the trial court based on unproven assertions that the ex-wife was living with a lesbian. We stated in Syllabus Point 3 of *Rowsey*:

" 'A change of custody should not be based only upon speculation that such change will be beneficial to the children.' Syl. pt. 6, *Holstein v. Holstein*, 152 W.Va. 119, 160 S.E.2d 177 (1968)."

In the present case, we conclude that the circuit court abused its discretion not only by considering facts not in evidence, but also by displaying a preexisting, negative attitude towards the mother. Moreover, given the circumstances, we are dismayed that no one presented any evidence from any neutral, third-party witnesses as to Jonathan's condition.[10]

We find the evidence that was presented to be highly contested by the parties and unclear. Therefore, we reverse and remand the entire custody issue for a fuller inquiry. In addition, we direct that the matter be reassigned by an appropriate administrative order to another judge to prevent a recurrence of the problems that exist in this case. *See Judith R. v. Hey*, 185 W.Va. at 124, 405 S.E.2d at 454 (upon remand, assigning case to another judge because the first judge abandoned his neutral role in a child custody decision); *State v. Buck*, 173 W.Va. 243, 248, 314 S.E.2d 406, 411 (1984) (ordering the designation of another circuit judge for resentencing of a criminal defendant).

Upon remand, Jonathan's best interests must be served by determining whether his mother, who is acknowledged to have been the primary caretaker, is a fit person to have custody of him under the principles contained in Syllabus Point 5, in part, of *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989):

"To be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child."

Allegations of abuse are always troubling and must be examined thoroughly, although certainly lack of child support from the father the first nine months of the child's life cannot be ignored when considering such issues as lack of adequate living conditions.

### III.

In domestic cases involving allegations of abuse and neglect, a circuit court or family law master may now order that a

---

10. Only one witness who was not related to the involved parties testified. She testified for the father and was characterized in his brief as a "friend of both parties[.]" However, the record reveals that this witness was not neutral and was to babysit for the father if he was awarded custody.

home study be performed to investigate the allegations under Rule 34(b) of the Rules of Practice and Procedure for Family Law.[11] Furthermore, under W.Va.Code, 49–6A–2 (1992),[12] it is mandatory for any circuit judge, family law master, or magistrate having reasonable cause to suspect abuse or neglect to immediately report the same to the Division of Human Services [13] of the Department of Health and Human Resources.

The circuit judge appointed to hear this case should order the Division of Human Services to perform a home study. Hopefully, a thorough home study will either disclaim or substantiate the allegations of neglect so that a proper determination of custody can be made. In custody cases where the evidence of abuse or neglect is not clear and is highly controverted, and the parties do not offer any neutral, third-party professional opinions to refute or substantiate the allegations, the circuit court should order a home study to ensure that any conclusions it makes will protect the best interests of the child.

We further order both the circuit court and the Division of Human Services to expedite this matter so that Jonathan is provided with a permanent and secure home. *See In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). In the meantime, we conclude that Polly A.S. should retain custody of Jonathan unless the circuit court finds that Jonathan is at a present or future risk of neglect and abuse.

For the foregoing reasons, the judgment of the Circuit Court of Grant County is reversed, in part [14], and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed, in part, and remanded.

**11.** The Rules of Practice and Procedure for Family Law were adopted by this Court on July 21, 1993, and became effective on October 1, 1993. Rule 34(b) specifically provides:

> "*Allegations of Abuse and Neglect.* When there are allegations that either one or both of the parties have abused or neglected the other party or any child of the parties, the family law master or circuit judge may, sua sponte or on motion of either party, order an investigation or home study of one or both of the parties. The family law master or circuit judge may apportion the costs of the home study or home studies, or order the department of health and human resources or other social service agency to perform the investigation. When a family law master or circuit judge finds that a child has been neglected or abused, the family law master or circuit judge shall report the abuse in accordance with the provisions of chapter 49, article 6A, section 2 of the Code of West Virginia."

**12.** W.Va.Code, 49–6A–2, was amended in 1992 to include the members of the clergy, circuit judges, family law masters, and magistrates. The relevant section of W.Va.Code, 49–6A–2, provides:

> "When any medical, dental or mental health professional, Christian Science practitioner, religious healer, school teacher or other school personnel, social service worker, child care or foster care worker, emergency medical services personnel, peace officer or law-enforcement official, member of the clergy, circuit court

judge, family law master or magistrate has reasonable cause to suspect that a child is neglected or abused or observes the child being subjected to conditions that are likely to result in abuse or neglect, such person shall immediately, and not more than forty-eight hours after suspecting this abuse, report the circumstances or cause a report to be made to the state department [division] of human services: Provided, That in any case where the reporter believes that the child has been seriously physically injured or sexually abused or sexually assaulted, the reporter shall also immediately report, or cause a report to be made to the department of public safety, and any law-enforcement agency having jurisdiction to investigate the complaint[.]"

**13.** Although W.Va.Code, 49–6A–2, refers to "the state department [division] of human services," the Executive Reorganization Act of 1989 redesignated this body as the Division of Human Services under the newly created Department of Health and Human Resources. *See* W.Va.Code, 5F–1–1 (1992); W.Va.Code, 5F–2–1(d) (1992); W.Va.Code, 9–2–1a.

**14.** Prior to the final order, the parties agreed that Jonathan's last name would be changed from S. to K. As part of its final order, the circuit court entered this change. We find no reason, nor does either side present any argument, that would be grounds for reversing this part of the order.