453 S.E.2d 646

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES ex rel. Brenda WRIGHT, Social Service Worker, Petitioner,**

v.

**DAVID L., Jill L., Chelsea L., Ashley L., and Joshua L., Respondents.**

No. 22311.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 15, 1994.

Margaret Phipps Brown, Asst. Pros. Atty. for Cabell County, Huntington, for petitioner.

James B. Lees, Jr., Hunt, Lees, Farrell & Kessler, Charleston, for respondent David L.

William D. Levine, J. William St Clair, St Clair & Levine, Huntington, for respondent Jill L.

CLECKLEY, Justice:

This case involves two certified questions relating to the Wiretapping and Electronic Surveillance Act, W.Va.Code, 62–1D–1, *et seq.*, and its federal counterpart in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.* The certified questions involve whether a husband, who no longer lives with his wife, but who suspects his wife of abusing their children, may use a third person with access to the wife's house to place a voice-activated tape recorder in the wife's house to record conversations between his wife and their children. We hold such conduct violates W.Va. Code, 62–1D–3(a)(1) (1987), and 18 U.S.C. § 2511(1)(a) (1988). Therefore, the audiotapes are inadmissible under W.Va.Code, 62–1D–6 (1987), and 18 U.S.C. § 2515 (1968).

## I.

### FACTS

Jill L.[1] filed for a divorce from David L. in October, 1993, and she was given temporary custody of their twin daughters, Ashley L. and Chelsea L., ages 6, and their son, Joshua L., age 5. Jill L. continued to reside in the marital home, and David L. moved. After the couple separated, but prior to their divorce, David L. asserts he became concerned that the children were being abused by Jill L., so he asked his mother, the children's paternal grandmother, to place a voice-activated tape recorder in the children's bedroom to record conversations between Jill L. and the children. The paternal grandmother had access to the home because she babysat the children. Through his mother, David L. retrieved a series of tape-recorded conversations. Jill L. was unaware the recordings were being made.

After listening to these conversations, David L. gave the tapes to his lawyer[2] who approached the Cabell County Prosecuting Attorney's Office. A therapist for Family Services, Inc., and a child protective service worker for the Department of Health and Human Resources (DHHR) listened to at least some of the tapes. Thereafter, on April 29, 1994, the DHHR filed a petition in the Circuit Court of Cabell County, and, by an order dated the same day, the DHHR, *inter alia*, was granted temporary legal and physical custody of the children. The order also authorized the DHHR to place physical custody of the children with David L.

A hearing on the petition was held on May 2, 1994. At the hearing, the child protective service worker testified she spoke with the children for about twenty minutes. She said the children indicated to her that Jill L. screams excessively at them and made a comment to the effect "she would kill them." One of the girls said she hides in the basement or behind a chair and covers her ears when her mother screams. In addition, all the children indicated Jill L. sometimes uses a belt, and Joshua L. indicated he suffered a bruise on his buttocks from a belt at least once. The child protective service worker stated she saw no signs of physical abuse on the children at the time she met with them, and she said they did not appear to be malnourished.

The child protective service worker also spoke with David L. and the children's paternal grandmother.[3] It was reported to her that Jill L.'s screams could be overheard by neighbors and Jill L. did not keep adequate food in the house. She attempted unsuccessfully to contact Jill L. After the child protective service worker testified, the circuit court judge stated the hearing could continue, but he wanted to speak personally with the children the next day. The hearing then concluded, and no one else testified.

---

**1.** As is our practice in cases involving sensitive facts, we do not use the last names to avoid stigmatizing the parties. *See, e.g., State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994); *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990).

**2.** David L. is represented by a different lawyer on appeal.

**3.** In addition, she spoke with the therapist from Family Services, Inc., who apparently talked to the children, but did not appear herself in court to testify. She also talked to the girls' kindergarten teacher who could not give her any specific information.

According to the brief on behalf of the DHHR, after the circuit court judge interviewed the children, but before the hearing resumed, the judge, Jill L., and her lawyer learned of the audiotapes. Jill L. and her lawyer, David L. and his lawyer, and the guardian ad litem for the children listened to the tapes. Afterwards, Jill L. agreed to maintain the custody arrangement as per the temporary order dated April 29, 1994. The circuit court judge apparently did not listen to the tapes and ordered them sealed.

On May 16, 1994, Jill L. filed a motion to vacate the order dated April 29, 1994, and award her custody of the children. In support of her motion, Jill L. asserted the DHHR failed to show by admissible evidence that she abused her children. The circuit court heard arguments on the admissibility of the audiotapes, and, by order dated May 26, 1994, the circuit court certified the following two questions to this Court:

"1. Does W.Va.Code 62–1D–3(a)(1) and its federal equivalent, 18 U.S.C. 2511, apply to a custody dispute where a father, upon suspicion of abusive behavior toward his children, procures a third party with access to the marital home to place a self-activating tape recorder in the children's bedroom for the purpose of recording conversations and interactions between the wife/mother and children?

4. By order dated June 22, 1994, this Court stayed all proceedings in the circuit court while we reviewed the certified questions. Subsequently, by order dated June 30, 1994, we clarified the stay to permit the DHHR to proceed with actions necessary to meet the best interests and needs of the children.

In its brief, the DHHR reports the children continue to have problems with Jill L. during visitations. These problems include "spankings and hittings, sometimes resulting in bruises, and emotional tirades directed toward them." The DHHR states the circuit court now has "entered an order more specifically setting out the terms of the supervision during visitation and abating all physical discipline of the children by either parent until further order of the Court."

5. 18 U.S.C. § 2511(1)(a) states:

"(1) Except as otherwise specifically provided in this chapter any person who—

"(a) intentionally intercepts, endeavors to intercept, or procures any other person to

"2. Are tape recordings which are the product of such interceptions admissible as evidence in a hearing to determine both temporary and permanent physical and legal custody?"

The circuit court ruled the tape recordings violated W.Va.Code, 62–1D–3(a)(1), and were inadmissible under W.Va.Code, 62–1D–6.[4] This Court reviews questions of statutory interpretation *de novo*. *See Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994).

## II.

## DISCUSSION

■ As the circuit court indicates in its first certified question, this case specifically is controlled by W.Va.Code, 62–1D–3(a)(1), and 18 U.S.C. § 2511 (1988). W.Va.Code, 62–1D–3(a)(1), provides: "(a) Except as otherwise specifically provided in this article, it is unlawful for any person to: (1) Intentionally intercept, attempt to intercept or procure any other person to intercept or attempt to intercept, any wire, oral or electronic communication[.]" The federal version of the statute set forth in 18 U.S.C. § 2511(1)(a) is substantially similar.[5] If communications are intercepted in violation of the provisions of W.Va.Code, 62–1D–3(a)(1), or 18 U.S.C. 2511(1)(a), such communications are inadmissible as evidence under W.Va.Code, 62–1D–6, and 18 U.S.C. § 2515.[6]

intercept or endeavor to intercept, any wire, oral, or electronic communication;

\* \* \* \* \* \*

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)."

6. W.Va.Code, 62–1D–6, states:

"Evidence obtained, directly or indirectly, by the interception of any wire, oral or electronic communication shall be received in evidence only in grand jury proceedings and criminal proceedings in magistrate court and circuit court: Provided, That evidence obtained in violation of the provisions of this article shall not be admissible in any proceeding."

Likewise, 18 U.S.C. § 2515 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer,

■ West Virginia's Wiretapping and Electronic Surveillance Act was adopted in 1987. Since its adoption, we have not addressed the issue of whether the Act prohibits the type of audiotaping at issue in this case. We did, however, address the parallel federal version of the Act in *Marano v. Holland*, 179 W.Va. 156, 366 S.E.2d 117 (1988), where we stated in Syllabus Point 15:

"One spouse's interception of telephone communications by the other is a violation of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, which by its terms renders them inadmissible."

David L. argues the facts of the present case are significantly different from the facts in *Marano* and the facts of the cases cited by *Marano*. Therefore, David L. asserts that Syllabus Point 15 of *Marano* should not apply to this case. Although we generally agree with David L. that the facts of the present case are different from the others, we find the holding in *Marano* and the holdings of several other federal courts are sufficiently analogous to conclude David L.'s conduct, via his mother, is prohibited under W.Va.Code, 62–1D–3(a)(1), and 18 U.S.C. § 2511(1)(a).

In *Marano*, a criminal defendant argued he was denied effective assistance of counsel, in part, by his lawyer's failure to seek the admission of certain audiotapes. The defendant surreptitiously audiotaped his wife's telephone conversations which revealed his wife was engaged in several extramarital re-lationships. Upon listening to some of the audiotapes, the defendant learned his wife was sexually involved with a close friend and business partner. The defendant then killed the man.

Upon review of the habeas corpus relief granted to the defendant by the Circuit Court of Ohio County, we disagreed with the circuit court's finding "that the failure to introduce the tapes 'seriously jeopardized' the defendant's case, in that they would have buttressed his insanity defense and provided a basis for a backup defense of diminished capacity." 179 W.Va. at 172, 366 S.E.2d at 133. (Footnote omitted). We found a majority of jurisdictions held such audiotapes violated 18 U.S.C. § 2510, *et seq.* Therefore, such audiotapes were inadmissible under 18 U.S.C. § 2515. 179 W.Va. at 172, 366 S.E.2d at 133. As support, we cited *United States v. Jones*, 542 F.2d 661 (6th Cir.1976); *United States v. Rizzo*, 583 F.2d 907 (7th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979); *Heyman v. Heyman*, 548 F.Supp. 1041 (N.D.Ill.1982); and *Gill v. Willer*, 482 F.Supp. 776 (W.D.N.Y.1980).

We recognize that these cases are factually different from the case at bar. The courts in *Jones*, 542 F.2d at 667, *Heyman*, 548 F.Supp. at 1045, and *Gill*, 482 F.Supp. at 778, however, all found the language of 18 U.S.C. § 2511(1)(a) is clear and unambiguous and prohibits all interceptions of wire communications unless otherwise explicitly permitted.[7] Consequently, these three cases de-

agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

7. One of the exceptions under 18 U.S.C. § 2510, *et seq.*, is set forth in 18 U.S.C. § 2516 (1988), which authorizes the interception of wire, oral, or electronic communications in certain situations. 18 U.S.C. § 2516(2) provides:

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or *other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year*, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses." (Emphasis added).

Therefore, under 18 U.S.C. § 2516(2), a prosecuting attorney may request a circuit court to enter an order permitting the interception of communications in certain situations.

clined to follow the decision in *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974).[8]

In *Simpson*, after reviewing and finding the legislative history inconclusive, the Fifth Circuit ruled that 18 U.S.C. § 2510, *et seq.*, did not apply to wiretapping a marital home's telephone and recording a spouse's conversations. Finding 18 U.S.C. § 2511(1)(a) was clear and unambiguous, the courts in *Jones*, *Heyman*, and *Gill* stated the Fifth Circuit violated the canon of not resorting to legislative history unless a statute is unclear or ambiguous. 542 F.2d at 667; 548 F.Supp. at 1045; 482 F.Supp. at 778. *Citing United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575, 579 (1961).

■ We agree with *Jones*, *Heyman*, and *Gill* that an analysis of legislative history is not necessary where a statute is clear and unambiguous. As we stated in Syllabus Point 1 of *State v. Boatright*, 184 W.Va. 27, 399 S.E.2d 57 (1990):

> " 'Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed.' Syllabus Point 1, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)."

We further said in *Boatright*, "[o]ne canon of statutory construction is to follow the statute's plain, unambiguous language. 'When the statute is unambiguous on its face, there is no real need to consider its legislative history.' " 184 W.Va. at 29, 399 S.E.2d at 59. (Citations omitted).

Nevertheless, in response to the examination of the legislative history the Fifth Circuit did in *Simpson*, *supra*, the Sixth Circuit in *Jones*, *supra*, conducted its own analysis. The Sixth Circuit explained that even upon a "review of the legislative history . . ., testimony at congressional hearings, and debates on the floor of Congress," it was led to the

In West Virginia, certainly child abuse and neglect are considered crimes that are "dangerous to life [and] limb . . . and [are] punishable by imprisonment for more than one year." 18 U.S.C. § 2516(2). *See* W.Va.Code, 61–8D–1, *et seq.* However, our legislature did not include child abuse and neglect in the statute authorizing interceptions of communications. W.Va.Code, 62–1D–8 (1987), permits an order authorizing interceptions of communications where there is "reasonable cause to believe the interception would provide evidence of the commission of" certain enumerated crimes. Among the crimes listed are those generally involving kidnapping and abduction; escape or aiding an escape by an inmate; "dealing, transferring or trafficking in any controlled substance or substances"; or aiding or abetting or conspiring to commit any of these offenses. We leave it to the sound discretion of the legislature if it chooses to amend W.Va.Code, 62–1D–8, to include such serious crimes as child abuse and neglect.

Upon its consideration of this issue, the legislature similarly should contemplate establishing a procedure whereby a parent could, under the authority of W.Va.Code, 62–1D–3(c)(2), be permitted to request an *ex parte* hearing before a circuit court for the purposes of obtaining the circuit court's permission on behalf of the child to tape record conversations when there is a reasonable basis for believing that child abuse is occurring or is about to occur. Just as a circuit court often is authorized to make or approve other decisions on behalf of minors and others under disability, so, too, should the circuit court have the authority, upon findings of fact tending

to demonstrate the likelihood that child abuse is occurring, to consent to such recordings on behalf of the minor. *See, e.g.*, W.Va.Code, 16–2F–4 (1984) (setting forth right of minor to petition circuit court for waiver of parental notification necessary for abortion); *see also* W.Va.Code, 44A–1–1 to –7 (circuit courts have appointment, modification, and termination powers as to guardians and conservators for protected persons); W.Va.Code, 56–4–10 (1923) (noting the duty of the circuit court to see that estate of infant or insane is both represented and protected); W.Va.R.Civ.P. 17(c) (guardian may sue on behalf of infant or incompetent).

Certainly, it would open a Pandora's Box of possible abuse to permit one parent to have open season on the interception of conversations of his or her former spouse in the name of child protection without any real safeguard in place for determining whether there was a legitimate and reasonable basis for such interception. However, in a truly legitimate case, a neutral judicial officer should have the authority to hear evidence to determine whether such interception is warranted and to limit the parameters of such interception in the least obtrusive manner possible, while still accomplishing its legitimate purpose.

**8.** In the other case cited by *Marano*, *supra*, *United States v. Rizzo*, *supra*, the Seventh Circuit factually distinguished the case before it from *Simpson*, *supra*, and said it "need not choose between the interpretations given the statute in *Simpson* and in *Jones* [, *supra* ]." 583 F.2d at 909.

inescapable "conclusion that 18 U.S.C. § 2511(1)(a) establishes a broad prohibition on all private electronic surveillance and that a principal area of congressional concern was electronic surveillance for the purposes of marital litigation." 542 F.2d at 669. (Footnote omitted). *See also United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341, 353 (1974) (where the Supreme Court said "[t]he purpose of the legislation, which was passed in 1968, was effectively to prohibit, on the pain of criminal and civil penalties, all interceptions of oral and wire communications, except those specifically provided for in the Act[.]" (Footnote omitted)).

The Sixth Circuit also distinguished the facts of its case from the *Simpson* case. In *Simpson,* the wiretapping occurred while the couple was still married and living in the same house. However, in *Jones,* the wiretapping occurred while the husband and wife were separated and living apart from each other. Thus, the Sixth Circuit concluded, "[u]nder these circumstances, we do not find applicable the implied interspousal exception to the wiretap statute recognized in *Simpson.*" 542 F.2d at 673. Similarly, other courts, including our Fourth Circuit, generally have held there is no interspousal exception to 18 U.S.C. § 2510, *et seq. See Pritchard v. Pritchard,* 732 F.2d 372 (4th Cir.1984); *Platt v. Platt,* 951 F.2d 159 (8th Cir.1989); *Kempf v. Kempf,* 868 F.2d 970 (8th Cir.1989); *Thompson v. Dulaney,* 970 F.2d 744 (10th Cir.1992); *Heggy v. Heggy,* 944 F.2d 1537 (10th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992); *Ex parte O'Daniel,* 515 So.2d 1250 (Ala.1987); *Rickenbaker v. Rickenbaker,* 290 N.C. 373, 226 S.E.2d 347 (1976); *Pulawski v. Blais,* 506 A.2d 76 (R.I.1986). *But see Anonymous v. Anonymous,* 558 F.2d 677 (2nd Cir.1977); *Janecka v. Franklin,* 684 F.Supp. 24 (S.D.N.Y.1987), *aff'd,* 843 F.2d 110 (2nd Cir. 1988).

Applying the language of 18 U.S.C. § 2510, *et seq.,* to the facts of the case at bar, we find there is no indication that Congress intended to create an exception for a husband, living apart from his wife, to procure a third person surreptitiously to tape record conversations between his wife and their children in the wife's house. We find it is insignificant that this case does not involve the interception of wire communications, i.e., telephone lines, in that 18 U.S.C. § 2511(1)(a) specifically applies to "any wire, *oral,* or electronic communication[.]" (Emphasis added). Similarly, we find W.Va.Code, 62–1D–3(a)(1), is clear and unambiguous and it, too, prohibits this type of conduct. Therefore, any recordings of conversations made in violation of W.Va. Code, 62–1D–3(a)(1), and 18 U.S.C. § 2511(1)(a) are inadmissible under W.Va. Code, 62–1D–6, and 18 U.S.C. § 2515.

■ The DHHR contends Jill L.'s conversations with her children do not fall within the parameters of 18 U.S.C. § 2511(1)(a), and W.Va.Code, 62–1D–3(a)(1), because she had no reasonable expectation her conversations were private. As support, the DHHR states that "neighbors have reported hearing [Jill L.'s] emotional outbursts toward her children, even when [Jill L.] and the children are inside their home. In fact, on one occasion, a neighbor outside in his yard using a power tool reported that he heard [Jill L.'s] screams over the noise of the tool." Thus, the DHHR argues Jill L.'s conversations are not "oral communications" as defined by 18 U.S.C. § 2510(2) (1986), and W.Va.Code, 62–1D–2(h) (1987).

Both statutes, 18 U.S.C. § 2510(2), and W.Va.Code, 62–1D–2(h), define oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." We find the DHHR's argument to be without merit. First, none of the neighbors testified at the hearing on May 2, 1994. In fact, at that point, it only had been reported to the DHHR that the neighbors overheard Jill L.'s screams, and the child protective service worker testified she had not actually spoken to any of them. As a result, even if we assume the neighbors did overhear Jill L.'s screaming, we do not know what the neighbors overheard or when they overheard it. Moreover, it virtually would be impossible to determine if the episodes the neighbors over-

heard are the exact same episodes recorded on the audiotapes.

Second, even if the neighbor's overheard various conversations Jill L. had with her children while Jill L. and the children were within their house, it did not give David L. *carte blanche* authority to procure a third person to hide a voice-activated tape recorder in the children's bedroom to record all conversations between Jill L. and the children. Certainly, Jill L.'s reasonable expectation of privacy would preclude such a serious intrusion.

■ The DHHR next argues that regardless of the policy reasons to protect Jill L.'s right to privacy, her right must be determined to be subordinate and, thus, succumb to the best interests of the children. We agree with the DHHR that the best interests of the children are of preeminent concern in child custody cases and to this Court. *See Judith R. v. Hey*, 185 W.Va. 117, 120, 405 S.E.2d 447, 450 (1990); *Honaker v. Burnside*, 182 W.Va. 448, 450–51, 388 S.E.2d 322, 324 (1989). However, under the facts of this case, it is not necessary for this Court to choose between Jill L.'s right to privacy and the best interests of the children. If the DHHR is correct in stating the neighbors have overheard Jill L.'s "emotional outbursts," then the audiotapes are not necessary to establish this claim. If they wish, the DHHR or David L. can call the neighbors to testify at the custody hearing. In addition, direct information given by the children or other types of admissible evidence, i.e., reports with regard to psychological examinations, may all be considered by the circuit court to determine the best interests of the children.

As a final argument, David L. asserts the tape recordings were not unlawfully obtained under W.Va.Code, 62–1D–3(c)(2) (1987), because he informed the children he would be recording in their bedroom at some unspeci-

fied time. David L. argues that he, as the children's father, had authority to give their consent under W.Va.Code, 62–1D–3(c)(2), which provides, in relevant part: "It is lawful ... for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception[.]" Substantially similar language also is contained in 18 U.S.C. § 2511(2)(d).[9] David L. cites no law in support of his position.

The closest case we can find to support David L.'s contention is *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993). In *Thompson*, Denise Dulaney and James Thompson were living apart from one another and in the process of getting a divorce when Ms. Dulaney tape recorded certain telephone conversations between Mr. Thompson and their children, ages three and five. During the custody hearings, Ms. Dulaney introduced transcripts of several conversations. The state court found both parents were fit, but awarded custody to Ms. Dulaney. Subsequently, Mr. Thompson filed suit alleging, in part, Ms. Dulaney's actions violated 18 U.S.C. § 2510, *et seq.*

Ms. Dulaney said she recorded the conversations because Mr. Thompson was interfering with her and the children's relationship. One of the defenses Ms. Dulaney raised to Mr. Thompson's suit was that under 18 U.S.C. § 2511(2)(d), she had "the parental right to consent on behalf of minor children who lack legal capacity to consent and who cannot give actual consent[.]"[10] 838 F.Supp. at 1544. Ms. Dulaney cited a litany of Utah law which grants to her the right to make various decisions for her children. In this respect, the court stated "Utah law clearly vests the legal custodian of a minor child with certain rights to act on behalf of that minor child." 838 F.Supp. at 1544. In addi-

---

**9.** 18 U.S.C. § 2511(2)(d) provides, in part:

"It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception[.]"

**10.** The court found because of the children's ages, three and five, the children "clearly lacked legal capacity to consent, and they could not, in any meaningful sense, have given actual consent, either express or implied, since they were incapable of understanding the nature of consent and of making a truly voluntary decision to consent." 838 F.Supp. at 1543.

tion, the court said it was "a close and difficult question," and carefully limited its holding to the particular facts before it. 838 F.Supp. at 1544. The court then went on to hold

> "as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children." 838 F.Supp. at 1544.

We do not disagree with the reasoning in *Thompson;* however, we determine the facts of the present case are different from the facts in *Thompson* in two significant respects. First, the children were physically residing with Ms. Dulaney at the time the conversations were recorded. Second, the conversations were recorded from a telephone in the house where Ms. Dulaney and the children resided.

■ On the other hand, in the present case, first, Jill L., not David L., was awarded temporary custody of the children during the divorce proceedings. Second, the recordings occurred in Jill L.'s house, not David L.'s house, and he had absolutely no dominion or control over Jill L.'s house where he procured his mother's assistance to hide the tape recorder. Thus, under the specific facts of the case before us, we hold a parent has no right on behalf of his or her children to give consent under W.Va.Code, 62–1D–3(c)(2), or 18 U.S.C. § 2511(2)(d), to have the children's conversations with the other parent recorded while the children are in the other parent's house. Therefore, David L. is not protected by the consent language in W.Va.Code, 62–1D–3(c)(2), or 18 U.S.C. § 2511(2)(d).[11]

■ Finally, we mention we are very much concerned that the best interests of these children are protected in the custody hearings. With regard to this concern, we direct the circuit court to order the DHHR to conduct home studies of both parents[12] if such studies are not already complete and satisfactory. As we state in Syllabus Point 5 of *John D.K. v. Polly A.S.,* 190 W.Va. 254, 438 S.E.2d 46 (1993):

> "In domestic cases involving allegations of abuse and neglect, a circuit court or family law master may order that a home study be performed to investigate the allegations under Rule 34(b) of the Rules of Practice and Procedure for Family Law."

The circuit court must examine closely the evidence on the fitness of both parents to determine whether Jill L. or David L. should be awarded permanent custody of their children. We further order both the circuit court and the DHHR to expedite this matter so the custody issue is resolved. *See John D.K., supra; In the Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991).

### III.

### CONCLUSION

For the foregoing reasons, we hold the recordings violated W.Va.Code, 62–1D–3(a)(1), and 18 U.S.C. § 2511(1)(a), and may not be admitted into evidence in the custody proceedings under W.Va.Code, 62–1D–6, or 18 U.S.C. § 2515. We, therefore, agree with the circuit court's conclusions with regard to the certified questions.[13]

The certified questions having been answered, this case is dismissed from the docket.[14]

Answered and dismissed.

---

11. We draw a distinction between the present situation and a situation in which a guardian, who lives with the children and who has a duty to protect the welfare of the children, gives consent on behalf of the children to intercept telephone conversations within the house where the guardian and the children reside.

12. Jill L. alleges in her brief that David L. "has a history of alcohol abuse and ... [has] physically terrorized [her] both during their marriage and after their separation."

13. We specifically do not address the propriety of any civil or criminal action that may be brought as the result of these recordings.

14. We question whether this case was an appropriate case for certified questions. *Cf. Bass v. Coltelli,* 192 W.Va. 516, 453 S.E.2d 350 (1994).

NEELY, Justice, concurring:

This case is like a single log floating upstream that neither notes nor considers the rush of other logs in downriver traffic. Although I agree that this log—case—is properly headed, I pause to consider the downriver traffic.

The majority holds, and I agree, that audiotapes surreptitiously recorded by one spouse in the house of the other estranged spouse are inadmissible under *W.Va.Code* 62–1D–3(a)(1) [1987]; however, the majority fails to see or consider the conflict between *W.Va.Rules of Evid.* and *W.Va.Code* 62–1D–3(a) [1987].[1]

First, under the *Rules of Evid.* these audiotapes are admissible. Rule 402 states that "[a]ll relevant evidence is admissible." Relevant evidence is defined by Rule 401 to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, the audiotapes are of Jill L.'s conversations with her children. These conversations show facts that are "of consequence to the determination of" the question of Jill L.'s alleged abuse of her children. Thus under Rule 402 the audiotapes are admissible.

Second, by using the reasoning of *Gilman v. Choi*, 185 W.Va. 177, 406 S.E.2d 200 (1990) (refusing to recognize the conflict between *W.Va.Code* 55–7B–7 [1986] and Rule 702, *W.Va.Rules of Evid.*) and *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) (*W.Va. Rules of Evid.*, Rule 702 prevails over *W.Va.Code* 37–14–3(a)'s license or certification requirement for real estate appraisers), the Court could have used the *Rules* to invalidate the specific statute. Indeed in this case the reasoning of *Gilman* and *Teter requires* the Court to ignore the legislature's prohibition against wiretapping—a mere section of the *Code*—to cite to this Court's rule-making authority as set forth in Syllabus Points 1 and 2 of *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988)[2] and to admit the audiotapes.

Today's opinion ignores the conflict between "procedural" and "substantive" mechanisms and circuit courts are left without guidance concerning when to follow a restrictive statute or the more liberal *W.Va. Rules of Evid.* As stated in my dissent in *Gilman* 185 at 190, 406 S.E.2d at 213, this Court should not use court-promulgated rules "to foreclose the use of tools such as modifications of the law of evidence traditionally thought to be available to legislatures." *See Reed v. Phillips*, 192 W.Va. 392, 398, 452 S.E.2d 708, 714 (1994) (Neely, J. dissenting) (judicial branch should not use "precious reasoning ... [to] confound ... [a] legitimate political compromise").

I concur in the direction of this log but pause to wonder at what the majority does not see or discuss.

JUSTICE CLECKLEY delivered the Opinion of the Court.

CHIEF JUSTICE BROTHERTON did not participate.

RETIRED JUSTICE MILLER sitting by temporary assignment.

JUSTICE NEELY concurs.

---

1. I recognize that this case can also be decided *exclusively* under 18 U.S.C. § 2511 and the *U.S. Constitution* Supremacy Clause. But the majority didn't decide that way, thus allowing me to have my usual fun with result-oriented principle manipulation.

2. Syl. pts. 1 and 2 of *Bennett, supra* provide:

   1. Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.

   2. "Under Article VIII, Section 8 [and Section 3] of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them." Syl.Pt. 1, *Stern Brothers, Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977).