719 So.2d 702 (1998)
Benita Smith SAUCIER (Chambers), Plaintiff-Appellee/Appellant,
v.
Eric Paul SAUCIER, Defendant-Appellant/Appellee.
No. 98-659.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
*703 Jeffrey Allan Riggs, Alexandria, for Benita Smith Saucier Chambers.
Michael Hathorn Davis, Alexandria, for Eric Paul Saucier.
Before SAUNDERS, DECUIR and SULLIVAN, JJ.
SULLIVAN, Judge.
This suit is on appeal after remand. The issues concern joint custody, visitation, and child support of the parties' two minor children, Adam and Evan Saucier. In our prior opinion, we remanded the case to the trial court to either correct the record or, alternatively, retry the matter because the transcript of the original hearing before Judge Metoyer had been lost by the district clerk of court. Saucier v. Saucier, 95-1501 (La.App. 3 Cir. 12/20/95); 666 So.2d 1191. Prior to our remand, Judge Metoyer was assigned exclusively to the criminal docket, and this case was assigned to Judge Foote. On remand, Judge Foote decided that the record could not be corrected and ordered a retrial.
After conducting a hearing on the matter, Judge Foote, in written reasons, decided to maintain joint custody with the mother, Benita Saucier Chambers, as the primary domiciliary parent. He awarded the father, Eric Saucier, visitation on every other weekend from Thursday after school to Sunday at 5:00 p.m. Judge Foote further ordered that, during June and July, Eric has primary domiciliary parent status with Benita having visitation every other Thursday to Sunday. Additionally, in the summer, Benita has one two-week period in addition to her regular bi-monthly visitation. On the issue of child support, the trial judge ordered Eric to pay $250.00 per month per child and one-half of school tuition and tutoring expenses. He also decreed that Eric provide health insurance and pay one-half of the non-covered medical expenses. Finally, Judge Foote determined that Eric was $4,000.00 in arrears for failing to pay support during the months of June and July for the years 1994-97. Judge Foote allowed Eric to repay the arrearage at the rate of $100.00 per month. Judge Foote rendered judgment in accordance with these reasons on August 12, 1997. Eric's motion for new trial was subsequently denied.
*704 Both Eric and Benita separately appeal the judgment. Eric asserts the trial court erred by:
I. Treating Judge Metoyer's prior judgment, which was the subject of the first appeal by Benita, as an "interim order."
II. Granting Benita's rule for an interim custody order while the first appeal was pending and jurisdiction remained in the court of appeal.
III. Conducting a new trial rather than holding a retrial for appeal purposes.
IV. Failing to decree an equal sharing of physical custody.
V. Making the summer support arrearages retroactive to 1993.
Benita asserts that the trial court erred in:
I. Failing to compute the child support guideline amount pursuant to La.R.S. 9:315.1 et seq.

II. Failing to award child support in an amount equal to the presumed proper amount according to the guidelines.
III. Failing to give specific reasons for deviating from the child support guideline amount.
IV. Failing to order the child support amount retroactive.
For the following reasons, we amend the judgment to allow Eric additional visitation every Thursday night from the time the children leave school until Friday morning. During the months of June and July when Eric is the primary domiciliary parent, this additional visitation shall inure to Benita's benefit. Additionally, we conclude that the trial court erred as a matter of law in failing to calculate the child support guideline amount before making an award of such support. Since the record contains enough financial information to allow us to calculate the amount, we shall do so and award child support in accordance with the guidelines. Finally, we reverse in part the retroactivity of the judgment awarding Benita arrearages for the summer months.

FACTS
Eric and Benita were married in 1981. They were divorced by judgment rendered May 22, 1990. At the time of their divorce, Adam was four years old and Evan was two years old. In the divorce judgment, the trial court incorporated a joint custody agreement with Benita as primary domiciliary parent. Eric was granted visitation every other weekend and overnight on Wednesdays. He also had visitation every third week from 8:00 a.m. Monday to 5:00 p.m. Tuesday until Adam finished pre-kindergarten. The judgment provided further that, after Adam began kindergarten, Eric's every third week visitation would be curtailed to Monday at end of school to 7:00 p.m. The judgment decreed that Eric pay $300.00 per month per child in support, provide health insurance, and pay the first $600.00 in uncovered medical expenses. The parties were to split the cost of excess out-of-pocket medical expenses.
On June 11, 1993, Eric filed a rule to change the joint custody plan and to terminate the payment of child support. Benita filed a reconventional demand seeking an increase in child support. Judge Metoyer conducted a hearing on the rule and reconventional demand on August 2, 1993. Judge Metoyer signed a judgment on the rule on August 22, 1994. The judgment maintained joint custody with Benita as the primary domiciliary parent. Eric's visitation was kept at every other weekend, but his weekday visits were changed to every Tuesday and Thursday from the close of school to 8:00 p.m. Eric kept primary domiciliary parent status for the summer, with Benita having visitation every other weekend and Tuesday and Thursday afternoons until 8:00 p.m. Judge Metoyer reduced Eric's child support obligation to $250.00 per month per child and specifically decreed that Eric was not required to pay child support in June and July. Judge Metoyer also required Eric to pay Adam's private school tuition, provide health insurance for the boys, and pay one-half of the uncovered medical expenses.
Benita appealed this judgment. Judge Metoyer signed an order of appeal on September 26, 1994. On January 11, 1995, the *705 Rapides Parish Clerk of Court notified Benita that the transcript of the hearing had been lost and no tape recording of the hearing could be found.
On June 12, 1995, Benita filed, in the district court, a motion to refix the case for a hearing. Therein, she represented that Judge Metoyer was, since the judgment, only hearing cases on the criminal docket and could not issue a written narrative of facts for purposes of the appeal due to a lack of scheduling flexibility. Judge Metoyer signed an order referring the case to Judge Foote for a hearing to be scheduled by Judge Foote.
On August 16, 1995, Eric filed a motion to vacate Judge Metoyer's order referring the case to Judge Foote. The motion was heard by Judge Foote on September 18, 1995. In reasons for judgment signed October 25, 1995, Judge Foote ruled that the district court was without jurisdiction to rule on the motion and had to wait for instructions from the appellate court.
On November 9, 1995, Benita filed in this court a motion to remand the case to the district court. On December 8, 1995, prior to this court remanding the matter, she filed in the trial court a motion to enter an interim order of custody. Eric responded with an exception of no cause of action. The matter was heard by Judge Foote on December 11, 1995.
On December 20, 1995, this court granted Benita's motion and, pursuant to La.Code Civ.P. art. 2161, remanded the case to the district court "for correction of the record, if possible, and in the alternative, a retrial of the hearing." Id. at 1192.
On February 6, 1996, Judge Foote rendered a judgment on Benita's rule for an interim custody order heard on December 11, 1995. Therein, he denied Eric's exception of no cause of action. Judge Foote granted Eric visitation on every other weekend and every Thursday from the close of school until Friday morning. On the weekends of his visitation, however, Eric would have Adam and Evan from Thursday after school to Sunday evening. Judge Foote also gave Eric visitation on Monday, Tuesday, and Wednesday from the close of school until 6:00 p.m. All other terms and conditions of Judge Metoyer's August 22, 1994 judgment were ordered to remain in force and effect.
On June 3, 1996, the trial court rendered reasons for judgment denying Eric's motion to vacate the June 12, 1995 order refixing the matter for a hearing. Judge Foote determined that it would be impossible to correct the record because the tapes of the prior hearing were lost and Judge Metoyer could not accurately report his findings for purposes of the appeal. Judge Foote decided to have the parties relitigate the matter with Judge Metoyer's August 22, 1994 order being treated as a provisional order.
On October 25, 1996, the trial court conducted a retrial on Eric's rule to change custody and terminate child support and Benita's reconventional demand seeking more child support. At the hearing, Dr. Daniel Lonowski, a clinical psychologist, testified that he evaluated Eric and his two sons and administered psychological tests to them in 1993. He also stated that he had done follow-up evaluation and testing during the week of the hearing. Dr. Lonowski concluded that Adam and Evan, while well adjusted to the present arrangement, should spend more time with their father. He said that each child exhibited a desire to spend more time with Eric. On cross-examination, Dr. Lonowski conceded that the children were managing "quite well" under Judge Foote's interim order. He also stated that he did not interview or evaluate Benita for purposes of his recommendation.
Eric testified that he works as a pharmacist employed by K & B. He works at least forty hours per week and is off three weekends per month. During the week, he works Monday through Friday from either 9:00 a.m. to 5:00 p.m. or 1:00 p.m. to 9:00 p.m. He typically has to work one or two evenings per week. Eric complained that, because of his work schedule, he has been unable to exercise fully his Monday, Tuesday, and Wednesday after school visitation. He said that he would like more time with the boys and that he is not asking for more time than Benita has. Eric explained that he is active in checking their homework, attending *706 parent-teacher conferences, taking them to church, and enrolling them in summer sports and camp activities. On cross-examination, Eric stated that he lives at his parents home but is in the process of moving to a home owned by his grandparents. The boys will each have their own room. He said that he wants more time with them during the week. When he has to work during a portion of his visitation, his parents care for the boys.
Benita said that she is satisfied with the current arrangement. She explained that, although Eric may want more time with the boys, his work schedule does not allow him to have more time because he has to work some evenings and weekends. Benita stated her belief that Eric's visitation should be spent by him primarily and his parents secondarily. She has remarried, and she characterized the children's relationship with their stepfather as good. She explained that she no longer works and is living off accrued retirement benefits while trying to start an at-home business. At her last job, she was earning $51,000.00 on an annual basis.
On July 29, 1997, the trial court rendered written reasons for judgment changing Eric's visitation schedule and support obligations as previously explained in the second paragraph of this opinion.
Eric moved for a new trial on the basis that the trial court should have considered his monthly color-coded charts showing actual time spent with each parent before issuing an order retroactive to June 11, 1993. Judge Foote then considered the charts and rendered judgment denying the motion because he found the charts evidenced fractionalization of weeks. Judge Foote concluded that such an arrangement is not in the best interest of the children. He signed a judgment denying Eric's motion for new trial on February 12, 1998.
Eric timely appealed from the August 12, 1997 judgment. Then Benita filed a separate appeal motion.

CUSTODY
Eric's first four assignments of error concern the issue of custody and visitation. First, he maintains that Judge Foote erred by treating Judge Metoyer's August 22, 1994 judgment as an interim order of custody. Judge Foote made this statement in written reasons for ruling concerning retrial of the matter on remand from this court.
The record indicates that, on remand, we ordered the district court to either correct the record, i.e., locate the transcript, or retry the case. Because Judge Foote inherited the case from Judge Metoyer after judgment but before our remand, and he determined that the transcript was lost and Judge Metoyer could not adequately recall his findings for purposes of preparing a narrative of facts for the appeal, correction of the record was not a realistic option. Therefore, Judge Foote correctly decided to have the case retried before him. The fact that Judge Foote ordered a retrial necessarily meant that a new judgment and reasons for judgment would result. This new judgment, based on Judge Foote's weighing of the testimony and evidence at the new hearing, replaced Judge Metoyer's prior judgment for purposes of appeal.
Given the peculiar procedural nature of this case, we conclude that Judge Foote's characterization of Judge Metoyer's prior judgment as an interim order, while technically incorrect, is not reversible error. Judge Foote was simply following our remand order to retry the case. This court did not intend for Judge Foote to retry the case then, despite the facts adduced at the hearing, mechanistically impose Judge Metoyer's prior judgment. Any error in nomenclature was harmless.
Second, Eric contends that Judge Foote erred in granting Benita's motion for an interim order of custody while Judge Metoyer's judgment was being appealed. He maintains that the trial court had no jurisdiction to issue such an order.
Benita's motion for an interim custody order was filed and the trial court's hearing on that matter was held while Judge Metoyer's judgment was on appeal. The interim order of custody was signed on February 6, 1996, after this court remanded the case to the trial court. At the time of the hearing, the trial court was divested of jurisdiction, and this circuit had exclusive jurisdiction over the *707 custody issue. La.Code Civ.P. art.2088. The interim order, which resulted from the hearing, is a nullity and is without effect. State, Through Louisiana Div. of Health & Human Resources Admin. v. Simmons, 521 So.2d 749 (La.App. 2 Cir.1988).
While the interim order is a nullity and Eric is correct concerning the question of jurisdiction, the effect of the interim order was to rearrange his visitation schedule and, in fact, give him more visitation than Judge Metoyer's judgment had given him. We cannot reverse the interim order because, by definition, it is not appealable and the subsequent judgment rendered the interim order moot for purposes of this appeal.
Third, Eric argues that Judge Foote erred in granting a new trial rather than a retrial for appeal purposes. Eric tries to establish a distinction between the two. La.Code Civ.P. art. 2161LA-STANN0004LQ allows the appellate court to remand a case for retrial or correction of the record when the record is incomplete, missing, or in error. We perceive no difference in this situation between a new trial and a retrial, especially considering that the presiding judge has changed. In LeBlanc v. City of New Iberia, Louisiana Municipal Fire and Police Civil Service Board, 559 So.2d 849 (La.App. 3 Cir.1990), this court remanded for a retrial because no transcript existed due to the malfunction of recording equipment. "Where ... part of the record is lost, and the appellant, through no fault or negligence on his part, is unable to bring up the case so that the merits thereof may be examined, the cause will be remanded for a new trial." Dauchite Lumber Co. v. Lane & Bodley Co., 52 La.Ann.1937, 28 So. 232, 233 (La.1900). Judge Foote did not err in granting the retrial/new trial.
In his fourth assignment of error, Eric asserts that the trial court erred in failing to decree equal physical custody of Adam and Evan. He argues that, under Judge Foote's order, he now must be without the children for eleven days in a row, an arrangement that they have never experienced. He points out that, since the original 1990 divorce decree, he has been able to have some visitation at least once a week.
In a joint custody decree and implementation order, "[t]o the extent feasible and in the best interest of the child, physical custody of the children should be shared equally." La.R.S. 9:335(A)(2)(b). This provision does not mandate fifty-fifty sharing of actual physical custody. Of paramount importance is the best interest of the children, taking into consideration the ages of the children, the parental situation, and other factors relevant to the issue of child custody. Brown v. Brown, 96-743 (La.App. 3 Cir. 2/26/97); 692 So.2d 458. Each case must be decided on its unique circumstances with reference to the best interest of the children. On review, the trial court's decree of joint custody will not be disturbed absent a clear showing of abuse of discretion. Id.
In written reasons, Judge Foote detailed that the "back and forth" joint custody that Adam and Evan were subject to under his interim order and, to a lesser extent, Judge Metoyer's prior judgment, was not in their best interest. He favored instead larger continuous blocks of time with each parent. However, in setting up the custody schedule, Judge Foote reduced Eric's visitation periods. The boys had never gone more than a week without seeing their father, and Dr. Lonowski opined that they needed more time with their father.
We conclude that Judge Foote abused his discretion in reducing Eric's visitation. Given the children's long history of regular weekly contact with their father, Eric should have been allowed visitation at least once a week. We, therefore, amend the judgment to provide Eric visitation every Thursday from the close of school overnight to Friday morning. On his visitation weekend, Eric will have the boys from Thursday after school to Sunday at 5:00 p.m.

CHILD SUPPORT
In his fifth assignment of error, Eric challenges the trial court's finding that he was in arrears for not paying child support during June and July for four years.
La.R.S. 9:315.21 provides, in pertinent part:

*708 A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand.
B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand.
The question is: under which subsection does this case fit? An interim child support allowance award was in effect at the time of Judge Foote's judgment, but that interim order was itself a nullity because it was rendered after a hearing held without trial court jurisdiction. The purpose of the retrial was to (possibly) modify Judge Metoyer's judgment, which the parties operated under before Judge Foote rendered the interim award. In Judge Metoyer's judgment, he specifically provided that Eric was not obligated to pay child support in June and July. The parties followed that order and reasonably relied upon it.
Clearly La.R.S. 9:315.21(C) is applicable since the parties, on retrial, sought to modify Judge Metoyer's prior judgment. The application of subsection (C), however, would be unfair to Eric since the "date of judicial demand" was June 11, 1993, over one year before Judge Metoyer rendered the judgment. Given the unique (and possibly bizarre) procedural circumstances of this case, we conclude that it is fair to both parties to amend the judgment to make Eric's obligation for the arrearages retroactive to the date of our remand order, December 20, 1995. We, therefore, reduce his obligation for the arrearages to $2,000.00 for 1996 and 1997.
All of Benita's assignments of error concern child support. She asserts that the trial court erred in failing to apply the guidelines, failing to state reasons for deviating therefrom, awarding an inadequate amount of child support, and failing to make the judgment retroactive to the date of her request for a change.
The trial court is required to calculate the amount of child support presumed to be proper under the circumstances pursuant to La.R.S. 9:315 et seq. La.R.S. 9:315.1(A). The trial court may deviate from the guideline amount, but, if it does so, it must give specific oral or written reasons supported by facts in the record. La.R.S. 9:315(B); Montou v. Montou, 96-1463 (La.App. 3 Cir. 4/2/97); 692 So.2d 705.
The record indicates that the trial court accepted as "Court Exhibit # 1" an incomplete child support worksheet showing the relative incomes of the parties. Benita's gross monthly income is shown as $0.00, since she no longer works, and Eric's is shown as $4,300.00. The basic child support obligation, health care insurance cost, private school cost and tutoring costs are penciled in on the form. There is no indication in the record that the trial court properly calculated the child support according to the guidelines. This was clear error.
The record contains sufficient information on the parties' income and child care expenses to allow us to perform the calculation. A remand to the trial court is not necessary. In doing so, we shall consider Benita's income earning potential pursuant to La.R.S. 9:315.9, which provides:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. The amount of the basic child support obligation obtained by use of this Section shall not exceed that amount which the party paying support would have owed had no determination *709 of the other party's earning income potential been made.
In the absence of evidence that work is unavailable or available only at a lower salary, the wage earned prior to voluntary unemployment is the best estimate of earnings potential. Glover v. Glover, 28,493 (La.App. 2 Cir. 6/26/96); 677 So.2d 659. The record contains the parties' income information for 1995.
The worksheet found in La.R.S. 9:315.15 provides for the following calculations:

 Benita Eric Combined
1. Monthly Gross Income $4,016.00 $4,256.00 $8,272.00
 a. Less preexisting child support payment 0.00 0.00 0.00
 b. Less preexisting spousal support payment 0.00 0.00 0.00
2. Monthly Adjusted Gross Income $4,016.00 $4,256.00 $8,272.00
3. Percentage Share of Income 48.5% 51.5%
4. Basic Child Support Obligation $1,505.00
 a. Net Child Care Cost 0.00
 b. Child's Health Insurance Premium Cost $67.87
 c. Extraordinary Medical Expenses 0.00
 d. Extraordinary Expenses
 (Private School Tuition) $160.00
 e. Extraordinary Adjustments 0.00
5. Total Child Support Obligation $1,732.87
6. Each Party's Obligation $840.44 $892.43
7. Recommended Child Support Order $892.43
 Adjustment for Eric's payment of health
 insurance premium -$67.87
 -------
 FINAL CHILD SUPPORT ORDER $824.56

We, therefore, hold that Eric must pay $824.56 per month for the support of his children, Adam and Evan. He must continue to pay their health insurance premium, but is no longer obligated to pay Adam's private school tuition on his own. Additionally, the parties are to share in the payment of any out-of-pocket medical expenses and tutoring costs in accordance with their relative income percentages. This judgment is made retroactive to the date of our prior remand order, December 20, 1995. Any and all amounts paid by Eric to support his children from that date to the date of this judgment shall be credited to him pursuant to La.R.S. 9:315.21(D).

DECREE
For these reasons, we modify the trial court's visitation order to allow Eric visitation every Thursday from the close of school overnight to Friday morning. We also reverse the trial court's ruling that the summer arrearages for 1994 and 1995 are owed retroactively. We also amend the child support award to increase Eric's monthly obligation to $824.56, retroactive to December 20, 1995.
Costs are assessed one-half to Eric Saucier and one-half to Benita Saucier Chambers.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.