841 So.2d 992 (2003)
Henrik A. LARSEN
v.
Anna Meria POLK.
No. 02-CA-1104.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
Writ Denied April 25, 2003.
*993 Patricia M. Franz, Metairie, LA, for Plaintiff-Appellee.
Dennis W. Moore and Juana Marine, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and SUSAN M. CHEHARDY.
EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Anna Meria Polk, the mother of a minor child, from a judgment 1) holding her in contempt for violating a previously issued judgment of child support and visitation, and 2) granting the petition of the Henrik Larson, the father, to grant him sole custody and relocate the child to Sugar Land, Texas, a suburb of Houston. For the following reasons, we affirm that judgment.
The child at issue here was about six years old on November 29, 2001, the date of the trial leading to this appeal. The issues of custody, visitation and child support have been the subject of extensive litigation between the parents, and the facts of these previous disputes were substantially presented at the present trial.
The most significant of these prior proceedings was a joint rule for custody and contempt against the mother heard on April 19 and August 28, 2000, before Judge *994 Ad Hoc M. Joseph Tiemann. The substantive facts developed at that hearing involved several expert reports rendered by Dr. William Janzen, a psychologist specializing in custody evaluations. His original opinion was that the father would be the better custodial parent because the mother was an airline stewardess who was frequently out of town. The mother thereupon made representations that she had stopped flying as a stewardess and would be doing administrative duties instead. Based on that information, Dr. Janzen concluded that she would be the better custodial parent. However, prior to trial the father presented evidence from the airline that indicated that the mother continued to work as a stewardess. At that point Dr. Janzen stated that he was unable to verify which version was correct and deferred to the court on that point. He did state that if the mother were still flying three or four days a week, then he would re-assert his original opinion that the father would be the better custodial parent.
On September 27, 2000, a judgment was signed ordering joint custody, and designating the father as the domiciliary parent. It further provided for alternating weekly visitation with a priviso that if either parent were to be out of town during their week, they would first offer the other parent visitation for that time before attempting to make other arrangements for the care of the child.
A second judgment was entered on October 30, 2000, holding the mother in contempt for "her deceit and abuse of the process and procedure of the court," obviously in regard to her misrepresentations that she was no longer flying. She was sentenced to six-months in jail, suspended, and ordered to pay the father some $5,000 in attorney fees and back child support. Future child support was ordered shared in a ratio of 72% to the father and 28% to the mother.
Eight months later, on June 11, 2001, the father filed two rules: one for contempt, alleging that the mother had violated the visitation provisions of the prior judgment; and the other to grant him sole custody of the child. While these matters were pending the father also notified the mother that he was seeking to relocate the child to Texas because of his job reassignment. The mother filed an opposition to this relocation on August 29, 2001.
All of the above matters were tried on November 29,2001. At trial the father asserted that the mother had on numerous occasions flown overnight without offering him the opportunity to keep the child. He also alleged that she had on other occasions either not returned the child for his visitation or had returned her late, and that she was often uncooperative about other visitation problems. He finally asserted that she had not paid her 28% share of the child's private school tuition, in spite of repeated demands.
The mother testified that either these events never occurred or that there was an innocent explanation for them. When asked about the tuition, she at first said that it was not yet due, and when confronted with demand letters to the contrary, finally admitted that she did not then have the funds. She further stated that she was taking a leave of absence from her job and produced a letter from the airline so stating.
Two judgments issued. In the first the trial judge found her in contempt for reasons orally assigned. In those reasons he stated that he found her testimony unbelievable. He noted particularly that her contention that she would be taking a leave of absence was another ruse to maintain joint custody and that he was convinced she would begin flying again just as *995 she had done before. He also found her failure to pay her share of the tuition inexcusable and further noted her attempt to claim it was not yet due in the face of incontrovertible evidence to the contrary. He also observed that this was the second time she had been in contempt of a court order. He sentenced her to 90 days in jail, suspended, but with active probation, and ordered her to pay $5845.69 in arrearages and attorney fees, plus court costs.
In the second judgment he granted the father's petition for sole custody as well as his request to relocate the child to Texas. In his reasons for judgment he noted particularly that the factor weighing most heavily in favor of relocation was the fact that the father could provide a more stable home for the child. He said that although the mother had indicated that she would stop flying, he simply did not believe her. In conjunction with this latter judgment, the judge also approved of a liberal visitation schedule for the mother, including six weeks in the summer and various other vacation times, which had been proposed to him by agreement of the parents.
The mother has now appealed both judgments. She urges as error that the trial judge erred in 1) approving of the relocation to Texas, 2) granting the father sole custody, and 3) holding her in contempt.
As in all child custody matters, district court determinations of relocation petitions are entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Curole v. Curole, 02-C-1891 (La.10/15/02), 828 So.2d 1094. Moreover, factual findings made in those courts cannot be disturbed absent manifest error. Id. Similarly, custody decrees will not be set aside absent a clear showing of an abuse of the trial court's discretion. Saucier v. Saucier, 98-659 (La.App. 3rd Cir.10/7/98), 719 So.2d 702.
The specific law applicable to relocation of children is set forth at La. R.S. 9:355.1 et seq. Section 355.13 states that the parent seeking relocation bears the burden of proving that the relocation is being made in good faith and that it is in the best interest of the child. Section 355.12 lists eight factors to be considered by the courts in deciding contested relocations, but does not specify that greater weight be given to any of them. See Curole v. Curole, supra.
In the present case, the trial judge addressed the above factors as follows. As to the good faith of the relocating parent, he found that the father clearly me this criterion. This determination was based on the father's testimony that his employer, Schlumberger Oilfield Services, was transferring him to the Houston area, and that if he did not accept that promotion he would probably be terminated. The father also testified that he had recently turned down another promotion opportunity with the company because it would have involved extensive travel and made any custody and visitation arrangements much more difficult.
As to the factors of La. R.S. 9:355.12, he made the following findings:
1) The nature, quality, extent of involvement, and duration of the child's involvement with the parents and family he found to be about equal as to whether relocation was advisable or not. He noted that the child had had a lifelong and close relationship with both parents, as well as with her maternal grandmother and various cousins. The one caveat that he expressed, based on the reports of Dr. Janzen, was that the mother might well leave the child with the grandmother for excessive periods of time while she was flying.
*996 2) Concerning the age and developmental stage of the child and her physical, educational and emotional development, the judge concluded that relocation would be in the child's best interest. He based this on the need for stability in the child's life which he deemed the father as more capable of providing. He again recited the previously noted problem of the mother often leaving the child with her grandmother when she was flying, and also apparently living in a number of different places since the child was born. Finally, he noted that the mother had been less than candid in several court appearances about her work and living arrangements with her daughter.
3) As to the feasibility of preserving the child's relationships with her parents and family, the judge found that the father would facilitate visitation with the mother and had agreed to pay one-half of the child's air-fare between Houston and New Orleans. He also pointed out the mother would get discounted air-fares as an airline stewardess thus reducing the financial burden of visitation travel.
4) The child's preferences were not considered because she was only six years old at the time of the hearing.
5) Concerning the relocating parent's pattern of fostering or impeding the child's relationship with the other parent, the trial judge found that the father had been exemplary in his efforts to promote the child's relationship with her mother. On the other hand, he found that the mother had hindered visitation.
6) The judge found that the quality of life of both the child and the father would be improved by the relocation. He noted that the housing and school situation in Sugar Land was good, and that the father was being promoted by his company.
7) The judge found that the father's motives for seeking relocation were basically that he was being promoted and if he did not accept the new position he would probably be discharged from the company. Further, he found well founded the father's fears that if he moved to Texas without the child, he would have a much more difficult time of maintaining his relationship with her.
8) In considering any other factors which weighed toward approving of the relocation, the judge emphasized that his concern was that the child have a stable home, and that because of the mother's frequent travel, the evidence weighed in favor of the father in that regard.
Our review of the record in this matter shows that the trial judge carefully considered the evidence and properly applied the criteria set forth in La. R.S. 9:355.12. While we may have made other factual findings, we cannot say that those made by the trial judge are manifestly erroneous, and must therefore affirm them. Further, his ultimate resolution that sole custody and relocation of the child, with liberal visitation on the part of the mother does not constitute an abuse of his much discretion in dealing with custody matters. We therefore must affirm those results as well.
We note here that the mother also asserts as error the failure of the trial judge to order another evaluation by Dr. Janzen in regard to the relocation petition. The record does not show that such a motion was made on the record. However, whatever that circumstance, the mother could have gotten such a report on her, own without a court order. We therefore find no error in the trial judge not himself ordering such a re-evaluation.
The mother's next alleged error is the award of sole custody to the father. We reject this assignment as well. As *997 noted above, custody decrees will not be overturned absent a clear showing of abuse of discretion. Saucier v. Saucier, supra. Also, a change in custody will not be ordered unless there has been some change in the circumstances warranting such a change. Benson v. Benson, 597 So.2d 601 (La.App. 5th Cir.1992). Also, where animosity or other disagreements between the parents make joint custody difficult, sole custody may be warranted. Id.
Here, it is clear that a significant change in circumstances has come about, i.e. the child's relocation to Texas. Additionally, evidence at the hearing showed that there were problems with the joint custody arrangement especially regarding the choice of schools. Again, while this court might have taken a different view of the evidence, we are unable to say that there was a clear abuse of the trial court's discretion in ordering the sole custody arrangement with liberal visitation. We therefore must affirm that order.
We finally point out in regard to the custody arrangement that the mother may always urge a rule for reinstatement of a joint custody regime if circumstances warrant such a change.
The final issue is the contempt ruling. This ruling was based on a number of credibility determinations made by the trial judge. It is apparent that he credited the father's testimony about numerous problems with the visitation schedule, and did not believe the mother's explanations. Similarly, he determined that she was simply lying to the court about when the tuition was due. He also noted the previous contempt ruling by Judge Tiemann (which was for "deceit and abuse of process,"), and found that she was similarly misleading the court about her proposed work plans. Because these are all factual determinations, we cannot set them aside except for manifest error. Since we find no such error here, we must affirm those findings, as well as the contempt ruling based upon them.
For the foregoing reasons, the judgments appealed are hereby affirmed.
AFFIRMED.