923 So.2d 732 (2005)
Markus Lee SMITH
v.
Michaelle Lea SMITH.
No. 2004 CU 2168.
Court of Appeal of Louisiana, First Circuit.
September 28, 2005.
*734 Charlotte A. Pugh, Angela D. Sibley, Denham Springs, for Plaintiff  Appellee Markus Lee Smith.
Frank Ferrara, Walker, for Defendant  Appellant Michaelle Lea Smith.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
In this child custody dispute, the mother, Michaelle Lea Smith (now "Duncan"), appeals a judgment modifying the parties' custodial arrangement from joint custody, with Michaelle Duncan designated as the domiciliary parent of the minor child, to sole custody in favor of the father, Markus Lee Smith, subject to supervised visitation by Michaelle Duncan with the minor child. Based on the record before us, we find no abuse of the trial court's discretion and therefore, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY
The parties in this matter, Markus Smith and Michaelle Duncan, were married to one another on July 27, 1992, and had one child prior to their marriage. The parties separated on April 19, 1994, and on April 20, 1994, a petition for divorce was filed. A judgment of divorce was subsequently rendered and signed on January 13, 1995. During the pendency of the divorce proceedings, the parties entered into a stipulated judgment, which among other things, awarded the parties joint custody of their minor child, with each party having physical custody of and being designated as domiciliary parent of the minor child on an alternating weekly basis, subject to modifications of the custodial periods for holidays and birthdays.
Thereafter, pursuant to a stipulated judgment rendered and signed on April 17, 2000, the parties modified their custodial *735 arrangement to provide that the parties would continue to share joint custody of the minor child, and that Michaelle Duncan would be designated as the child's domiciliary parent, subject to reasonable and specific visitation by Markus Smith, consisting of three weekends per month, Father's Day, Markus Smith's birthday, and other holiday visitation as agreed on by the parties.
On November 7, 2002, Michaelle Duncan filed a rule to show cause requesting that her award of child support be increased, that Markus Smith's regular visitation schedule be modified from three weekends per month to alternating weekends, and that his summer visitation be set with specificity.
Markus Smith responded by filing a reconventional demand requesting a modification of custody and a recalculation of child support in accordance with any modification of custody. Specifically, with regard to the modification of custody, Markus Smith requested that he be awarded custody and be designated as the domiciliary parent of the child, subject to reasonable visitation by Michaelle Duncan. Alternatively, he requested that neither party be designated as the domiciliary parent of the minor child and that the parties share equal physical custody of the child on an alternating weekly basis.
Thereafter, the parties stipulated to (and, therefore, the trial court ordered) a psychological custody evaluation to be performed by Dr. Alicia Pellegrin, a clinical psychologist selected by the parties. On July 11, 2003, Dr. Pellegrin issued a written report regarding the custody evaluation. In this report, Dr. Pellegrin made the following recommendations pertaining to custody: that the parties continue to share joint custody of the minor child; that there be no designation of domiciliary parent, and that the child spend equal time (alternating weeks and holidays) with both families; that the child go to Markus Smith's home after school (even during Michaelle Duncan's week) as Markus Smith was better equipped to assist the child with her homework; that the child remain in counseling with Markus Smith and his new wife (the child's step-mother) to aid the child in adjusting to her new and "blended family;" that the child receive individual counseling to aid her in adjusting to her parents' divorce and the present custody battle; that Michaelle Duncan cease placing obstacles in the way of the relationship between the child and Markus Smith, and if she continued to do so, the custodial arrangement be modified by designating Markus Smith as the domiciliary parent; and that both parties cease placing the child in the middle of their disputes. According to an interim consent judgment rendered on July 21, 2003, the parties agreed to abide by all of these recommendations set forth in Dr. Pellegrin's report.
Thereafter, on August 19, 2003, Dr. Pellegrin wrote a letter to the trial judge changing her recommendation to immediately awarding sole custody in favor of Markus Smith, with Michaelle Duncan being granted supervised visitation. According to the letter, Dr. Pellegrin changed her recommendation based on the contents of a taped telephone conversation between Michaelle Duncan and the child, which occurred after the parties received the custody evaluation. This conversation was intercepted and tape-recorded by Markus Smith (in his home), without Michaelle Duncan's knowledge or consent and without the child's knowledge or consent (hereinafter referred to as "the wiretapped conversation"). Based on Dr. Pellegrin's letter, Markus Smith sought an *736 ex-parte sole custody award; however, his request was deferred to a hearing.
When Michaelle Duncan learned that Markus Smith had been intercepting and tape-recording the telephone conversations between her and the child without their knowledge or consent (which she contends was an action in violation of La. R.S. 15:1303 or an illegal wiretap), Michaelle Duncan sought orders: (1) compelling Markus Smith to produce copies of all tape-recorded conversations between her and the child; (2) prohibiting Markus Smith from using the tapes (or the contents thereof) as evidence at any trial or hearing in accordance with La. R.S. 15:1307; (3) disqualifying and removing Dr. Pellegrin as a witness of the court, on the basis that her opinion was tainted by the alleged illegal wiretapped conversation; (4) sanctioning Markus Smith for his alleged illegal behavior by ordering him to pay costs and attorney fees; (5) prohibiting Markus Smith from further intercepting or tape-recording conversations between her and the child without their consent; and (6) awarding her custody of the child due to Markus Smith's alleged illegal behavior. On March 1, 2004, after a contradictory hearing on Michaelle Duncan's requests, the trial court rendered judgment ordering Markus Smith to produce copies of all tape-recorded conversations between her and the child, denying the remainder of Michaelle Duncan's requests, and setting all pending custody issues for a trial on the merits to be held on March 15, 2004. Michaelle Duncan sought a supervisory writ of review with this Court of the trial court's ruling, which was denied on July 23, 2004, on the basis that the trial court's rulings in this regard could be reviewed on an appeal of the judgment from the March 15, 2004 custody trial.[1]
The custody trial was held on March 15, 2004. After the introduction of evidence, the trial court rendered judgment, that among other things, awarded Markus Smith sole custody of the minor child, awarded Michaelle Duncan supervised visitation to occur on every other weekend and on holidays, and ordered Michaelle Duncan to obtain counseling with a qualified therapist, who was to be recommended by Dr. Pellegrin and who would be able to make recommendations to the court in the future concerning modifications of Michaelle Duncan's visitation schedule. The trial court signed a written judgment to this effect on May 3, 2004, and it is from this judgment that Michaelle Duncan has appealed.

ASSIGNMENTS OF ERROR
In Michaelle Duncan's appeal, she raises three assignments of error, all of which pertain to the wiretapped conversation. These assignments of error are that the trial court erred in ruling that the wiretapped conversation was admissible in evidence because she alleges it was intercepted in violation of La. R.S. 15:1303, and hence inadmissible according to La. R.S. 15:1307; that the trial court erred in refusing to remove or disqualify Dr. Pellegrin as an expert, since she reviewed and rendered an opinion based on that allegedly illegal wiretapped conversation; and that the trial court erred in refusing to sanction Markus Smith for his alleged violation of La. R.S. 15:1303. The resolution of all of these assignments of error depends on the determination of whether the interception and tape-recording of the wiretapped conversation *737 by Markus Smith was a violation of La. R.S. 15:1303.

LOUISIANA'S WIRETAPPING STATUTE
Louisiana Revised Statute 15:1303 (the "wiretapping statute") provides, in pertinent part, as follows:
A. Except as otherwise specifically provided in this Chapter, it shall be unlawful for any person to:
(1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication;
(2) Willfully use, endeavor to use, or procure any other person to use or endeavor to use, any electronic, mechanical, or other device to intercept any oral communication when:
(a) Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
(b) Such device transmits communications by radio or interferes with the transmission of such communication;
(3) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Subsection; or
(4) Willfully use, or endeavor to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Subsection.
B. Any person who violates the provisions of this Section shall be fined not more than ten thousand dollars and imprisoned for not less than two years nor more than ten years at hard labor.
* * *
C. (3) It shall not be unlawful under this Chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. Such a person acting under color of law is authorized to possess equipment used under such circumstances.
(4) It shall not be unlawful under this Chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception, unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of the state or for the purpose of committing any other injurious act.
Thus, although Louisiana law generally prohibits the interception of wire or oral communications, an exception is made where the interceptor is a party to the communication or where one of the parties consents to the interception (the "consent exception"). La. R.S. 15:1303(C)(4) and (5).
In this case, it is undisputed that the interceptor, Markus Smith was not a party to the wiretapped conversation, and that Michaelle Duncan, a party to the wiretapped conversation did not consent to its interception. However, Markus Smith contends that he consented to the interception and tape-recording of the wiretapped conversation on behalf of his child, while the child was in his home, and hence, his *738 action fell under the consent exception to the wiretapping statute.
Although the issue of allegedly illegal wiretaps and/or secretly recorded telephone conversations have been mentioned and discussed in the jurisprudence of our state,[2] these cases have never specifically resolved the issue of whether a parent may consent to the interception of an oral, wire, or electronic communication on behalf of his or her minor child. However, there is jurisprudence from the federal courts and from the appellate courts of other states that resolve this issue in favor of allowing a parent to consent on behalf of the child under certain circumstances, referred to as the "vicarious consent" doctrine. Although these federal cases and cases from other states are not binding on this court because those cases review the issue of vicarious consent pursuant to the consent exception set forth in 18 U.S.C. § 2511(2)(c) & (d), which is contained in the federal wiretapping statute, 18 U.S.C. § 2511, and the consent exceptions set forth in the wiretapping statutes from the respective states in which those courts were situated, these cases are persuasive in determining whether a vicarious consent doctrine should be applied to the consent exception set forth in Louisiana's wiretapping statute in some certain, limited situations.
In Thompson v. Dulaney, 838 F.Supp. 1535, 1544 (D.Utah 1993), a federal district court determined that "as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her [or his] statutory mandate to act in the best interests of the children." In reaching this determination, the court noted that the Utah Supreme Court had declared that the rights associated with being a parent were fundamental and basic rights, and therefore, a parent should be afforded wide latitude in making decisions for his or her children. The court further noted that Utah statutory law gave parents the right to consent to legal action on behalf of a minor child in situations, such as marriage, medical treatment, and contraception, and that it also gave the custodial parent the right to make decisions on behalf of her children. Thus, the parental right to consent on behalf of a minor child, who lacks legal capacity to consent, was a necessary parental right. Id. However, the federal district court made it clear that its holding was "very narrow and limited to the particular facts of the case" (i.e., the minor children's relationship with their guardian was allegedly being undermined by the other parent), and was "by no means intended to establish a sweeping precedent regarding vicarious consent under any and all circumstances." Thompson, 838 F.Supp. at 1544 n. 8.
In Pollock v. Pollock, 154 F.3d 601, 610 (6th Cir.1998), a federal appellate court adopted the standard set forth by the federal district court in Thompson and held "that as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording." Like the court in Thompson, the Pollock court stressed that the *739 vicarious consent "doctrine should not be interpreted as permitting parents to tape any conversation involving their child simply by invoking the magic words: `I was doing it in his/her best interest,"' but rather should be limited to "situations, such as verbal, emotional, or sexual abuse by the other parent" wherein it is necessary for the parent to protect a child from harm. Pollock, 154 F.3d at 610.
In Campbell v. Price, 2 F.Supp.2d 1186, 1191 (E.D.Ark.1998), a federal district court, in noting that Arkansas state law imposed a duty on a parent to protect his or her minor child from abuse or harm and provided that a parent must consent for the child in certain situations, such as marriage, and non-emergency medical treatment, found that a parent may vicariously consent to the interception of a child's conversations with the other parent if the parent has an objective "good faith belief that, to advance the child's best interests, it was necessary to consent on behalf of his [or her] minor child".
In Silas v. Silas, 680 So.2d 368, 371 (Ala.Civ.App.1996) a state appellate court adopted the reasoning of Thompson, and held "that there may be limited instances where a parent may give vicarious consent on behalf of a minor child to the taping of telephone conversations where that parent has a good faith basis that is objectively reasonable for believing that the minor child is being abused, threatened, or intimidated by the other parent."
In West Virginia Dep't of Health & Human Resources v. David L., 192 W.Va. 663, 453 S.E.2d 646 (1994), a state appellate court found that a father had violated the federal wiretapping statute when the father recorded conversations between his children and their mother (his ex-wife) by virtue of a tape recorder secretly installed in the mother's home. Under the particular facts of the case, the state appellate court declined to find that the father could vicariously consent to the recording of the conversation; however, the court was not opposed to the concept of vicarious consent in a situation where a guardian, who lives with the children and who has a duty to protect the welfare of the children, consents on behalf of the children to intercept telephone conversations within the house where the guardian and the children reside. West Virginia DHHR, 453 S.E.2d 654 & n. 11.
We note that West Virginia DHHR, is clearly factually distinguishable from the case before this court. In this case, the child was residing equally with both Michaelle Duncan and Markus Smith on an alternating weekly basis, the child was residing with Markus Smith at the time the wiretapped conversation was recorded, and the conversation was recorded from a telephone in the house where Markus Smith and the child were residing. In West Virginia DHHR, the mother had been awarded custody and the father tape-recorded conversations between the child and the mother in the mother's home  not his own home. Thus, the father could not vicariously consent to the interception of the child's communications at the mother's home. This is an important difference.
Lastly, the only court that addressed the issue of vicarious consent and then declined to follow it was Williams v. Williams, 237 Mich.App. 426, 603 N.W.2d 114 (1999), wherein a state appellate court determined that, while controlling federal jurisprudence (Pollock) required it to consider the vicarious consent exception with regard to any violation of the federal wiretapping statute, there was no indication that its own state legislature intended to create such an exception to its state eavesdropping statute (wiretapping statute), and accordingly declined to extend such an exception under state law.
*740 After thoroughly reviewing the facts, reasoning, and holdings of these cases, we find Thompson, Pollock, Campbell, and Silas, persuasive authority with regard to whether, under certain circumstances, a parent should be able to vicariously consent on behalf of his or her minor child to an interception of a communication for several reasons. First, the federal wiretapping statute (18 U.S.C. § 2511 et seq.) is not only very similar to Louisiana's wiretapping statute, but it also contains a consent exception like that of Louisiana. Since all of the federal courts that have reviewed this issue have determined that the vicarious consent doctrine is applicable to the consent exceptions set forth in the federal wiretapping statute (when the parent has a good faith, objectively reasonable basis to believe that it is necessary and in the child's best interest), then this same doctrine should be applicable to the consent exception set forth in the Louisiana wiretapping statute, under the same, limited circumstances.
Second, the standard set forth by these cases, which authorize a parent to vicariously consent on behalf of the child to an interception of the child's communications with the other parent (or a third party), is clearly limited to situations where a parent has good faith concern that such consent in necessary and in his or her minor child's best interest. Since Louisiana law provides that the paramount consideration in any determination of child custody is the best interest of the child,[3] we see no reason why, in the context of a child custody proceeding, a parent, who is in his or her own home, should not be able to consent to the interception of the child's communications with the other parent, if the parent has a good faith, objectively reasonable basis to believe that such consent to the interception is necessary and in the best interest of the child.
Third, since Louisiana law provides that minors do not have the capacity to consent to juridical acts, such as marriage, contracts, matrimonial agreements, and likewise vests parents with the authority to protect their children, to make all decisions affecting their minor children and to administer their minor children's estates,[4] it follows that a parent should have the right to consent, on behalf of a child lacking legal capacity to consent, to an interception of the child's communications, particularly if it is in the child's best interest.
In support of Michaelle Duncan's argument that Markus Smith's actions were illegal and that he could not consent on behalf of the child, Michaelle Duncan cites Glazner v. Glazner, 347 F.3d 1212 (11th Cir.2003). However, we do not find this case to be persuasive authority in this regard, as the issue in Glazner pertained to inter-spousal wiretapping, which is "qualitatively different from a custodial parent tapping a minor child's conversations within the family home." Newcomb v. Ingle, 944 F.2d 1534, 1535-36 (10th Cir. 1991), cert. denied, 502 U.S. 1044, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992).
According to the record in this case, the parties were having problems with their custodial arrangement, and therefore, they agreed to the psychological custody evaluation to help them address these problems. Specifically, Markus Smith's desire to participate in the custody evaluation was due to concerns he had with regard to Michaelle *741 Duncan. He felt that Michaelle Duncan was constantly alienating him from their child, creating problems with visitation, and refusing to cooperate or consult with him regarding decisions affecting the child. These concerns were confirmed in the interview of Michaelle Duncan conducted by Dr. Pellegrin as part of the evaluation, as Michaelle Duncan was unable to identify any strengths that Markus Smith had as a parent, and admitted to telling the child everything about the custody battle, to giving Markus Smith information about the minor child only if he requested, to refusing to tell Markus Smith when she took the child to the doctor, and to withdrawing the minor child from the private school the child was enrolled in without consulting or discussing the matter with Markus Smith (who had been paying the private school tuition). According to the custody evaluation and the testimony of Dr. Pellegrin, Michaelle Duncan's behavior was having such detrimental effect on the minor child, that she specifically stated that Michaelle Duncan had to cease such behavior and allow Markus Smith to maintain a positive relationship with the child, and if not, she recommended a modification of custody.
According to Markus Smith, it was this past detrimental behavior, as noted in the evaluation, that caused him shortly thereafter to install the tape recording device on his telephone, because he still had concerns that Michaelle Duncan would not refrain from this conduct, despite Dr. Pellegrin's recommendation. Thereafter, Markus Smith discovered the wiretapped conversation at issue that occurred between the child and Michaelle Duncan.
During this conversation, Michaelle Duncan criticized the child for being honest with Dr. Pellegrin, told the child that she had hurt her (Michaelle Duncan) with the things that she told Dr. Pellegrin, and that since the evaluation was not in her favor, they (Michaelle Duncan and the child) needed to strategize to salvage the situation. Michaelle Duncan recommended that the child not be honest in court, purposefully fail school to make Markus Smith look bad (since Markus Smith was going to be the one overseeing the child's studies, because Dr. Pellegrin believed he was more capable of assisting with her homework and studies), told the child to keep a log of every argument that occurred at Markus Smith's home as well as every punishment (so that the information could be used in court), and instructed the child to take pictures of Markus Smith's house whenever it was messy (so that the pictures could be used in court to show Markus Smith was unfit and kept a messy house).
Upon hearing this conversation, Markus Smith stated that he be became very concerned about the psychological damage that Michaelle Duncan was causing the child in the child's conversations with her mother, and therefore, he brought the tape to Dr. Pellegrin. After Dr. Pellegrin reviewed the tape, she opined that the child was clearly being subjected to severe emotional abuse by Michaelle Duncan, in that Michaelle Duncan was clearly alienating the child from her father, encouraging the child to spy on her father and family, and asking her to perform poorly in school. This testimony was not contradicted by Michaelle Duncan or by any other evidence.
Therefore, based on the foregoing, we find that Markus Smith had a good faith, objectively reasonable basis for believing that it was necessary and in the child's best interest for him to consent, on behalf of the child, to the interception of the child's conversations with her mother. Consequently, we find that Markus Smith's actions fell under the consent exception *742 set forth in La. R.S. 15:1303(C)(4), and therefore, the wiretapped conversation was not a violation of La. R.S. 15:1303.

ADMISSIBILITY OF THE WIRETAPPED CONVERSATION
Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Turner v. Ostrowe, XXXX-XXXX (La.App. 1st Cir.9/27/02), 828 So.2d 1212, 1216, writ denied, 2002-2940 (La.2/7/03), 836 So.2d 107. Except as otherwise provided by law, all relevant evidence is admissible. La. C.E. art. 402.
Michaelle Duncan contends that the wiretapped conversation was intercepted in violation of La. R.S. 15:1303, and was hence, inadmissible evidence under La. R.S. 15:1307.
Louisiana Revised Statute 15:1307(A) provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this Chapter.
Accordingly, in order to be excluded from evidence under this statute, the wiretapped conversation must have been obtained in violation of La. R.S. 15:1303. Because we have already determined that Markus Smith's actions were not in violation of La. R.S. 15:1303, we find no abuse of the trial court's discretion in admitting the wiretapped conversation into evidence at the custody hearing. Accordingly, we find no merit in this assignment of error.

EXPERT TESTIMONY
The trial court has great discretion in determining the qualifications of experts and the effect and weight to be given to expert testimony. Absent a clear abuse of the trial court's discretion in accepting a witness as an expert, an appellate court will not reject the testimony of an expert or find reversible error. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 477, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
Michaelle Duncan contends that the trial court erred in allowing Dr. Pellegrin to testify and in refusing to remove or disqualify Dr. Pellegrin as an expert, since she reviewed and rendered an opinion based on that allegedly illegal wiretapped conversation. Again having found that Markus Smith's actions were not in violation of La. R.S. 15:1303, and that the wiretapped conversation was admissible into evidence, we find no abuse of the trial court's discretion in allowing Dr. Pellegrin to testify and render an opinion in this matter based on that conversation. Accordingly, we find no merit in this assignment of error.

SANCTIONS
Michaelle Duncan further contends that the trial court erred in not sanctioning Markus Smith for his alleged violation of La. R.S. 15:1303 by ordering him to pay reasonable attorney fees and costs of the proceedings. However, in order to impose sanctions against Markus Smith under La. R.S. 15:1303(B), his actions must have been in violation of La. R.S. 15:1303. Again having found that Markus Smith's actions were not in violation of La. R.S. 15:1303, we find no error in the trial court's refusal to impose sanctions *743 on Markus Smith. Accordingly, we find no merit in this assignment of error.

CUSTODY
Lastly, Michaelle Duncan has appealed the judgment awarding sole custody to Markus Smith and awarding her supervised visitation (which would be subject to modification after she obtains counseling), contending that this erroneous custody award arose from the erroneous ruling with regard to the wiretapped conversation.
Every child custody case must be viewed in light of its own particular set of facts and circumstances. Major v. Major, 2002-2131 (La.App. 1st Cir.2/14/03), 849 So.2d 547, 550; Gill v. Dufrene, 97-0777 (La.App. 1st Cir.12/29/97), 706 So.2d 518, 521. The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738; La. C.C. art. 131. Thus, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major, 849 So.2d at 550.
Louisiana Civil Code article 134 enumerates twelve non-exclusive factors relevant in determining the best interest of the child, which may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In modifying the parties' custodial arrangement in this case, the trial court clearly scrutinized the evidence and considered all of the above factors. The court heard testimony from Markus Smith, Michaelle Duncan, Dr. Pellegrin, the child's schoolteachers, a personal friend of Markus Smith, and Markus Smith's new wife. Additionally, the trial court considered the contents of the wiretapped conversation. After weighing all of the evidence, the trial court apparently concluded that an award of sole custody to the father was shown by clear and convincing evidence to serve the best interest of the *744 minor child.[5] In light of the evidence contained in this record and the trial court's broad discretion in making custody determinations, we do not find that the trial court abused its discretion in awarding custody to Markus Smith.

CONCLUSION
Accordingly, the May 3, 2004 judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Michaelle Duncan.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
I respectfully concur with the result reached by the majority under the specific and limited facts of this particular case.
NOTES
[1] See Markus Lee Smith v. Michaelle Lea Smith Duncan, 2004-CW-1172, unpublished writ action.
[2] See Shields v. Shields, 520 So.2d 416 (La. 1988); Benson v. Benson, 597 So.2d 601, 603 (La.App. 5th Cir.), writ denied, 600 So.2d 627 (La.1992); Briscoe v. Briscoe, 25,955 (La.App. 2nd Cir.8/17/94), 641 So.2d 999, 1002-07; and Brown v. Brown, 39,060 (La.App. 2nd Cir.7/21/04), 877 So.2d 1228, 1235.
[3] See Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738; La. C.C. art. 131.
[4] See La. C.C. arts. 28, 216, 221, 223, 235, 1918, and 2333; La. Ch.C. art. 1545; and La. R.S. 9:335.
[5] See La. C.C. art. 132.